Richard HAYES, Plaintiff-Appellant,

v.

The **BOARD OF REGENTS OF KEN-TUCKY STATE UNIVERSITY**, a body corporate, et al., Defendants-Appellees.

No. 73–1976.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1974.

Decided April 25, 1974.

Robert Allen Sedler, Lexington, Ky., for plaintiff-appellant; Richard N. Rose, Lexington, Ky., on brief.

Bert T. Combs, Louisville, Ky., for defendants-appellees; Ed W. Hancock, Atty. Gen., Carl Miller, Asst. Atty. Gen., Commonwealth of Ky., Frankfort, Ky., Charles R. Simons, Louisville, Ky., on briefs; Tarrant, Combs, Blackwell & Bullitt, Louisville, Ky., on counsel.

Before WEICK and LIVELY, Circuit Judges, and ROSENSTEIN, Customs Judge.*

---

* The Honorable Samuel M. Rosenstein, Senior Judge, United States Customs Court, sitting by designation.

LIVELY, Circuit Judge.

The issue in this case is whether a person registered to vote within a given state may be required to pay out-of-state tuition while attending a public institution of the state. The facts are undisputed. Plaintiff first came to Kentucky in August 1968 for the purpose of attending Kentucky State University at Frankfort. At the time of his registration he listed his residence as Gary, Indiana. On May 31, 1972 Hayes registered to vote in Kentucky, giving a Frankfort address as his residence. Thereafter the University continued to charge plaintiff the tuition rates established for non-resident students. In his complaint, plaintiff attacked the rules promulgated in Kentucky for determination of residency status for tuition purposes on the ground that—

> They do not provide that a student who is registered to vote in Kentucky is considered to be a Kentucky resident and proceed on the assumption that a person who is registered to vote in Kentucky may still be considered a non-resident and may be compelled to pay the tuition rates established for non-residents.

The district court found no denial of due process or equal protection in the classification of students for tuition purposes or in the guidelines promulgated by the defendants for determining student residency status and providing for administrative review of such determinations. Hayes v. Board of Regents of Kentucky State University, 362 F.Supp. 1172 (E.D.Ky.1973). In oral argument before this court, counsel for plaintiff stated that the only issue is whether voter registration is conclusive of citizenship as defined in the Fourteenth Amendment to the Constitution of the United States.

Section 1 of the Fourteenth Amendment declares in part that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." This is the only definition of citizenship contained in the Amendment. The plaintiff argues that when a state permits a person to register as a voter this is a conclusive determination of state citizenship which precludes the state from classifying such person as a non-resident of the state for any other purpose. The Fourteenth Amendment states only that all persons are citizens of the State where they reside. It requires a state to treat its residents as citizens. However, neither the due process clause nor the equal protection clause is for the benefit of citizens only. One applies to "any person" and the other to "any person within its jurisdiction." Thus the plaintiff's argument that voter registration is conclusive of citizenship does not state a case of deprivation of Fourteenth Amendment rights because citizenship is not a requirement for one to claim its benefits. (The privileges and immunities clause is not in issue here.)

Putting aside the citizenship argument, the next question is whether voter registration is conclusive of residence within a state. In the context of this case, the answer depends on the law of Kentucky which states that a person must be a resident of the state *and* registered in order to be eligible to vote. Kentucky Revised Statutes (KRS) 128.-020. Registration alone is not conclusive of the right to vote. This is absolutely clear from KRS 125.137(1) which provides:

> The fact that a person is registered constitutes only prima facie evidence of his right to vote and does not prevent the officers of any election from refusing to allow him to vote for cause.

If a person who is registered to vote is challenged or if the election officers disagree as to his qualifications, the person must "sign a written oath as to his qualifications" which is subsequently presented to the grand jury. KRS 125.-137(2). If the fact of registration is not conclusive of a person's right to vote, it is obviously not conclusive for

any other purpose. That a student has registered to vote within the state is but one of a number of relevant factors which may reasonably be considered in the determination of residency status for tuition purposes. Cf. Vlandis v. Kline, 412 U.S. 441, 454, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

In his brief, the plaintiff relies, secondarily, upon the argument that the criteria contained in the rules of the University for determining resident status are constitutionally impermissible, and we will decide this issue as well, although counsel did not stress it in oral argument. Specifically complained of is the provision that residence "shall denote continuous and physical presence within this state with the demonstrated intention of remaining permanently. . . ." It is claimed that the inquiry should be limited to the student's present intention to remain and that a requirement of an intention to remain permanently unconstitutionally penalizes the right to travel, citing Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L. Ed.2d 274 (1972). Thus, he reasons, the regulations deal with a fundamental right which cannot be "penalized" unless a compelling state interest requires it. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). We adhere to our previous ruling that regulations dealing with the right of a student to be classified as a resident for tuition purposes are not concerned with one of the fundamental constitutional rights which must be tested by the "compelling state interest" standard. Kelm v. Carlson, 473 F.2d 1267, 1271 (6th Cir. 1973). Important as it is, higher education is not one of the "necessities of life" to which the *Shapiro* rule is limited. See Memorial Hospital v. Maricopa County, 415 U.S. 250, at 260, n. 15, 94 S.Ct. 1076, at 1083, 39 L. Ed.2d 306 (1974); Sturgis v. State of Washington, 368 F.Supp. 38 (W.D. Wash.), aff'd. mem., 414 U.S. 1057, 94 S. Ct. 563, 38 L.Ed.2d 464 (1973); Starns v. Malkerson, 326 F.Supp. 234 (D.Minn. 1970), aff'd. mem., 401 U.S. 985, 91 S. Ct. 1231, 28 L.Ed.2d 527 (1971).

The proper test to determine the validity of the regulations promulgated by the defendants is whether they bear some rational relationship to a legitimate state purpose. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). The condition which is required for resident treatment is a present intention to remain permanently in Kentucky. This is nothing more than the classic definition of domicile. It does not impose "a condition completely beyond the control of the applicant" which we held to be unreasonable in Kelm v. Carlson, *supra*. Under the regulations, Kentucky affords the student an opportunity to demonstrate that he has changed his residence from another place to Kentucky. There is no irrebuttable presumption against such change occurring. The regulations do put the burden of proving the change on the applicant, but this is not unreasonable. All of the facts necessary for the determination are within his knowledge and possession. The Supreme Court has recognized the legitimate state purpose involved in maintaining higher tuition charges for non-residents attending public institutions than those charged for residents. Vlandis v. Kline, *supra*. We believe the regulations which the plaintiff seeks to have us hold unconstitutional bear a rational relationship to this state interest and provide a reasonable basis for making the determination of residency.

The plaintiff made no request that Kentucky State University reclassify him, nor did he avail himself of the administrative procedures and machinery for review of his classification. The defendant Council on Public Higher Education urges us to dismiss this action for failure to exhaust administrative remedies. Since the complaint was based on a specific attack on the guidelines and rules which govern the administrative remedies and alleged that the rules themselves constituted an infringement of constitutional rights, this civil rights action could be maintained without a prior exhaustion of remedies provided by the State. Gibson v. Berryhill,

411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

Plaintiff sought to have this case treated as a class action in which he sued on behalf of himself and ". . . students currently enrolled as full-time students at Kentucky State University who are registered to vote in the Commonwealth of Kentucky and who desire treatment equal to that received by other persons at Kentucky State University with respect to tuition rates." In light of our decision that voter registration is not conclusive for tuition purposes, and that the existing regulations which require a demonstration of intent are valid, it is clear that each case must be treated and decided on its own facts. The district court correctly refused to treat this case as a class action.

The judgment of the district court is affirmed.