**Roger Owen HOOBAN, Plaintiff-Appellant,**

v.

**Edward J. BOLING et al., Defendants-Appellees.**

**No. 74–1159.**

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1974.

Decided Oct. 2, 1974.

Roger Owen Hooban, Knoxville, Tenn., for plaintiff-appellant.

Ronald C. Leadbetter, Knoxville, Tenn., for defendants-appellees.

William H. Haltom, Jr., Student Body President, U-T Student Government, Knoxville, Tenn., on brief for amicus curiae Student Body Association.

Before PHILLIPS, Chief Judge, and CELEBREZZE and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

Plaintiff-appellant, Roger Owen Hooban, a law student at the University of Tennessee at the time the suit was filed, brought this action pursuant to 42 U.S.C. § 1983, claiming that his classification by university officials as "out-of-state" for tuition purposes was "arbitrary, unreasonable and invidious" and, thus, a violation of the Equal Protection Clause of the Fourteenth Amendment and, further, that his classification has violated his right to travel. District Judge Robert L. Taylor, after hearing the case without a jury, dismissed the action in an opinion reported at 371 F. Supp. 1111 (E.D.Tenn.1973). We affirm.

Appellant and his wife moved to Knoxville, Tennessee, from Arizona on September 17, 1971. He enrolled in and commenced attendance at the University of Tennessee School of Law on September 19, 1971. He was classified as an out-of-state student for tuition purposes. In September 1972, Mr. Hooban requested reclassification to in-state status.

His request was denied. On September 26, 1972, Mr. Hooban appealed this denial to the University's Residency Fee Classification Committee and made an oral presentation to that committee. Subsequent review of his out-of-state classification within the administrative structure of the University proved fruitless. In March 1973, the University's Board of Trustees denied the request for in-state status. On May 22, 1973, Mr. Hooban filed suit against Dr. Edward J. Boling, President of the University of Tennessee, and Carl Pierce, Assistant Dean of the Law School, seeking declaratory and injunctive relief and damages.[1]

The issues on appeal are: (1) Whether the University of Tennessee's regulations for determining residency status for tuition purposes on their face or in their application are violative of the Equal Protection Clause of the Fourteenth Amendment; and (2) did Mr. Hooban's classification as an out-of-state student serve to penalize him for exercising his right to travel?

Under the University of Tennessee's regulations,[2] a full-time student must be domiciled in the State for one year immediately preceding the last date for submitting application for enrollment to qualify as an in-state student for tuition and fee purposes. Regulations, paragraph 3(1), Appendix. Domicile is defined as a person's "true, fixed and permanent home and place of habitation." Id. at paragraph 2(3). Moreover, a person is presumed not to have gained in-state status if he is a full-time student. Id. at paragraph 4(1). This presumption is not irrebuttable, but may be overcome by clear and convincing evidence. Id. at paragraph 4.

■ We hold that the one year residency requirement and the rebuttable presumption of out-of-state status do not violate the Equal Protection Clause, nor do they violate appellant's right to travel. Vlandis v. Kline, 412 U.S. 441, 452 & n. 9, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Hayes v. Board of Regents, 495 F.2d 1326 (6th Cir. 1974); Kelm v. Carlson, 473 F.2d 1267 (6th Cir. 1973); Sturgis v. State of Washington, 368 F.Supp. 38 (W.D.Wash.), aff'd mem., 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973); Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

Appellant has also challenged as being violative of the Equal Protection Clause that part of the regulations that permits the unemancipated children of residents who have just moved to Tennessee to be eligible immediately for in-state tuition if their parents establish domicile and are not full-time students. Regulations, paragraph 3(3), Appendix hereto. Furthermore, it is also argued that the policy of allowing new teachers at the University of Tennessee, and their families, the in-state tuition rate is violative of the Equal Protection Clause. Specifically, appellant contends that these classifications are "arbitrary, unreasonable and invidious."

■ The test by which these distinctions must be measured is whether they bear a rational relationship to a legitimate state objective. Hayes, supra, 495 F.2d at 1328; Kelm, supra, 473 F.2d at 1271; Sturgis, supra, 368 F.Supp., at 41; Starns, supra, 326 F.Supp. at 239.

In Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), a leading case dealing with the application of the Equal Protection Clause to state regulation, the Court stated:

"In the area of economics and social welfare, a State does not violate the

---

1. We view the prayer for injunctive relief as moot since Mr. Hooban already has graduated from the law school.

2. The regulations under which Mr. Hooban was classified as an out-of-state student in September 1971 and the fall of 1972 were superseded by new regulations which became effective January 1, 1973. For purposes of this appeal, only the more recent regulations are relevant. They are made an appendix to this opinion.

Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393]."

■ A state has a "legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis, supra*, 412 U.S. at 453, 93 S.Ct. at 2237.

■ We hold that the regulation that allows the unemancipated children of new, non-student residents who have established a domicile within the state to qualify for in-state tuition is reasonable and has a rational basis to a legitimate state objective. A primary justification for a one year waiting period in the case of full-time students is to achieve a partial cost equalization through the payment of the higher out-of-state tuition rate. This justification is present in the case of new, non-student domiciliaries. A non-student resident who is domiciled in the State may be expected to contribute to the economy of the State through employment, taxes and other expenditures. Moreover, it is wholly reasonable to expect a bona fide domiciliary to make intangible contributions to the State. The fact that the regulation requires the new resident to establish domicile and not be a full-time

student is justified by the anticipation that he will shoulder in some way the burdens of his citizenship.

The classification is also justified as an effort by the State to insure that only bona fide domiciliaries will be given the preferential lower tuition rate. It is reasonable to expect that a non-student who has become domiciled in the State did not establish that domicile to take advantage of a lower tuition rate. On the other hand, a full-time student who is claiming in-state status may very well be motivated solely by a desire to escape the tuition surcharge. We believe that it is reasonable for a State to require a full-time student to reside in the State for one year as an element of domicile. Such a requirement does no more than demonstrate a student's bona fides and provide a period in which the State will receive some benefit, whether tangible or intangible, from the student's presence.

■ With respect to the policy of allowing new teachers at the University of Tennessee and their families the benefit of the in-state tuition rate, we see no equal protection violation. A State is entitled to offer in-state tuition to a new teacher and his family as part of the employment package, i. e., as a fringe benefit, even though the family has not resided in the State for one year. To hold otherwise might hamper the University's chances of attracting highly qualified teachers from other States.

We further hold that the "right to travel" contention of appellant is completely without merit.

Finally, Mr. Hooban contends that, even if the regulations are constitutional it was, nevertheless, "arbitrary, unreasonable and invidious" to refuse to classify him as an in-state student.

■ In Kelm v. Carlson, *supra*, 473 F.2d at 1271–1272, we recognize that it would not be arbitrary or unreasonable for a university to put a strong burden of proof as to change of residence on a former out-of-state student who was claiming in-state status. The Universi-

ty of Tennessee has adopted a clear and convincing evidence standard. Regulation, paragraph 4, Appendix. The regulations list a number of factors that a student may submit as evidence to overcome the presumption of continued out-of-state status. These considerations are listed in paragraph 5 of the Appendix, and are not all-inclusive as evidenced by item 6. Other factors that would also be relevant to a determination of domicile include: 1) car registration in State, 2) driver's license in State, 3) city or county sticker for car, 4) voter registration and voting in State, 5) payment of State and local taxes, 6) participation in community and professional activities in the State, 7) presence of immediate family and relatives in the State and 8) length of time in the State. See *Vlandis, supra,* 412 U.S. at 454, 93 S.Ct. 2230, 37 L.Ed.2d 63.

■ Any determination of domicile seeks to use the foregoing objective criteria to aid in establishing a subjective concept, *i. e.,* intent to remain in the State. The concept of domicile is subject to no formula, but rather depends on the facts of each case. For example, in Hayes v. Board of Regents, *supra,* 495 F.2d at 1328, we noted that voter registration within a State "is but one of a number of relevant factors which may reasonably be considered in the determination of residency status for tuition purposes." The relative weight to be given each objective factor is not capable of quantification. The question to be answered in each case is whether the student came to the State solely to attend school or whether he intends to make the State his home.

■ The University of Tennessee held that Hooban had not met his burden of establishing that he had been domiciled for one year. The district court, upon an extensive trial record, found that the University's action was not arbitrary, unreasonable, capricious or invidious. We agree, and hold the district court's determination to be not clearly erroneous.

In so holding, we do not express any view as to whether Mr. Hooban became domiciled subsequent to the action of the University officials. We, therefore, are unable to consider many of the factors that Mr. Hooban has argued. These include events that were not only subsequent to the action of the University of Tennessee, but also occurred subsequent to the decision of Judge Taylor.

Affirmed.

## APPENDIX

PARAGRAPH 1. INTENT. It is the intent that the public institutions of higher education in the State of Tennessee shall apply uniform rules, as described in these regulations and not otherwise, in determining whether students shall be classified as in-state or out-of-state students for fees and tuition purposes.

PARAGRAPH 2. DEFINITIONS. Wherever used in these regulations:

(1) The word "institution" shall mean a university or community college supported by appropriations made by the Legislature of this State.

(2) The word "residence" or "reside" shall denote continuous and permanent physical presence within this State, provided that temporary absence for short periods of time shall not affect the establishment of a residence.

(3) The word "domicile" shall denote a person's true, fixed, and permanent home and place of habitation. It is the place where he intends to remain, and to which he expects to return when he leaves without intending to establish a new domicile elsewhere.

(4) The term "emancipated person" shall mean a person who has attained the age of eighteen years, and whose parents have entirely surrendered the right to the care, custody, and earnings of such person and who no longer are under any legal obligation to support or maintain such deemed "emancipated person."

(5) The word "parent" shall mean a person's father or his mother; or if one parent has custody of an unemancipated person, the person having cutody; or if there is a guardian or legal custodian of an unemancipated person, then such guardian or legal custodian; provided, that there are not circumstances indicating that such guardianship or custodianship was created primarily for the purpose of conferring the status of an in-state student on such unemancipated person.

(6) Attendance at a school or schools in this State shall be deemed "continuous" if the person claiming continuous attendance has been enrolled at a school or schools in this State as a full-time student, as such term is defined by the governing body of said school or schools, for a normal academic year or calendar year, or the appropriate portion or portions of such years, since the beginning of the period for which continuous attendance is claimed. Such person need not attend summer session or other such inter-sessions beyond the normal academic year in order to render his attendance "continuous."

(7) The word "his" shall apply to the female as well as the male sex unless the context otherwise clearly requires.

### PARAGRAPH 3. RULES FOR DETERMINATION OF STATUS.

(1) Every person having his domicile in this State for one calendar year immediately preceding the last date for submitting application to an institution for enrollment in the institution shall be entitled to classification as an in-state student for fee and tuition purposes. No person having his domicile elsewhere than in this State shall be eligible as an in-state student for tuition purposes.

(2) The domicile of an unemancipated person is that of his parent.

(3) Upon moving to this State, an emancipated person, who provides persuasive evidence of domicile, may apply for in-state classification for his unemancipated children; and provided that said person is not himself in this State primarily as a full-time student, his unemancipated children may at once be so classified, and may continue to be so classified so long as said person continues his domicile in this State.

(4) Any person who remains in this State when his parent, having theretofore been domiciled in this State, removes from this State, shall be entitled to classification as an in-state student as long as his attendance at a school or schools in this State shall be continuous.

(5) An unemancipated person whose parent is a member of the armed forces and stationed in this State or at Fort Campbell pursuant to military orders shall be classified as an out-of-state student, but shall not be required to pay out-of-state tuition. The student, while in continuous attendance toward the degree for which he is currently enrolled, shall not be required to pay out-of-state tuition when his parent thereafter is transferred on military orders.

(6) Part-time students who reside in Tennessee and are employed full-time in the State or at Fort Campbell pursuant to military orders and who would be classified out-of-state in accordance with other provisions of these regulations will be classified out-of-state, but will not be required to pay out-of-state tuition while enrolled as a part-time student.

### PARAGRAPH 4. PRESUMPTIONS.

Unless the contrary appears from clear and convincing evidence, it shall be presumed that:

(1) No emancipated person shall be deemed to have gained residence while attending any educational institution in this State as a full-time student, as such status is defined by the governing board of such institution.

(2) The domicile of a married person shall be determined by the provisions of these regulations independent of the residence of the spouse.

(3) A person does not gain or lose in-state status for reason of his presence in any State or country while a member

of the armed forces of the United States; provided that a member of the armed forces may obtain in-state status for himself and his dependents by establishing his domicile in this State.

PARAGRAPH 5. KINDS OF EVIDENCE TO BE CONSIDERED FOR ESTABLISHMENT OF DOMICILE. If a person asserts that he has established domicile in Tennessee for a period of one calendar year immediately preceding the last date for submitting application to an institution for enrollment in the institution, he has the burden of proving he has done so. The following kinds of evidence will be considered in reviewing an assertion by a person that he is domiciled in Tennessee, but having evidence of any of these will not necessarily result in a finding that a student is domiciled in the State.

(1) Home Ownership. Dwelling in a house on the person's real property.

(2) Continued Residency. Probability that a person will remain in Tennessee beyond his completion of attendance at the institution.

(3) Military Service. Entering the military service from the State of Tennessee, home of record and permanent address at the time of discharge in the State of Tennessee, and return after discharge to live or attend school in Tennessee.

(4) Marriage. Marriage to bona fide Tennessee resident.

(5) Source of Income. No regular substantial financial assistance from his parent.

(6) Any other evidence the person may present which may aid in determining whether he has established domicile in Tennessee.

PARAGRAPH 6. APPEAL. All resident classifications shall be made by the Dean of Admissions at each institution in accordance with these regulations. The decision of the Dean of Admissions may be appealed to the Committee on Residency Classifications on each campus of the University, which shall, after granting a hearing and fully considering the merits of each case, recommend the appropriate resident classification of the student to the Chancellor, who shall then classify the student. The decision of the Chancellor may be appealed to the President of the University and his decision may be appealed to the Board of Trustees of the University.

PARAGRAPH 7. EFFECTIVE DATE FOR RECLASSIFICATION. If a student classified nonresident applies for in-state residency classification on or before the last day of registration of a quarter or semester and is subsequently so classified, his in-state residency classification shall be effective for the quarter or semester in which he applied for reclassification.

PARAGRAPH 8. EFFECTIVE DATE. These regulations supersede all previously adopted regulations by the Board, and having been approved by the Governor, become effective January 1, 1973.