Thomas E. LISTER, William N. Cooney, and James S. Thiel, Plaintiffs-Appellants,

v.

Thomas H. HOOVER, individually and as Registrar; Nellie A. Finnane, individually and as Residency Examiner and Lon W. Weber and David J. Hanson, each individually and as a member of the Committee on Appeals from Non-Resident Tuition of the University of Wisconsin-Madison Campus, Defendants-Appellees.

No. 80–1978.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1981.

Decided July 31, 1981.

As Amended Aug. 20, 1981.

Daniel W. Hildebrand, Madison, Wis., for plaintiffs-appellants.

LeRoy L. Dalton, Asst. Atty. Gen., Madison, Wis., for defendants-appellees.

Before CUMMINGS, Chief Judge,* CUDAHY, Circuit Judge, and MAROVITZ, Senior District Judge.**

PER CURIAM.

Plaintiffs are three former students at the University of Wisconsin at Madison, who were denied resident status and the accompanying reduced tuition for a portion of the period of their enrollment as students. Their claim, under 42 U.S.C. § 1983 (1976), is that the defendant officials of the University of Wisconsin violated their

---

* At the time of oral argument, Judge Cummings was a Circuit Judge. He assumed the title of Chief Judge on July 1, 1981.

** The Honorable Abraham L. Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

rights under the equal protection and due process clauses of the Fourteenth Amendment by denying them resident status. At present, plaintiffs' claims have narrowed and are now solely against the officials in their individual capacities for money damages. The district court found in favor of the defendants on all claims with the exception of one claim that was dismissed by stipulation and this appeal followed.[1]

### I. The Factual Background

Three plaintiffs[2] are involved in this appeal and their circumstances differ somewhat in non-material ways. Rather than unduly lengthen this opinion by an unnecessary recitation of the facts, we shall describe a composite of their circumstances to provide a backdrop for our legal analysis.

Plaintiffs were emancipated adults when they enrolled at the University of Wisconsin Law School within a few weeks of moving to Wisconsin. Each was classified as a non-resident for tuition purposes at that time. None of the plaintiffs challenge their initial classification as non-residents.

Each of the plaintiffs waited over a year before applying for reclassification in 1971 as a "bona fide resident" for tuition purposes. See Wis.Stat. § 36.16 (1971). Under that statute as enacted at the time in question,[3] a "student from another state who is in this state principally to obtain an education [would] not be considered to have established a residence in Wisconsin by virtue of attendance at educational institutions." Wis.Stat. § 36.16(3) (1971). As construed by the district court, that statute provides for a *rebuttable* presumption of non-residency for students like the plaintiffs who have moved to Wisconsin to enroll in educational institutions.[4] The same subsection of the statute provides that "[i]n determining bona fide residence, filing of state income

tax returns in Wisconsin, eligibility for voting in this state, motor vehicle registration in Wisconsin, and employment in Wisconsin shall be considered." Wis.Stat. § 36.16(3) (1971). These four criteria are neither necessary nor themselves sufficient to establish "bona fide residence" within the meaning of the statute but are considered important guidelines on the ultimate question of a student's intent to be domiciled in Wisconsin for purposes other than merely getting an education.

When plaintiffs applied for reclassification, they met all or at least a portion of the four statutory criteria. Additionally, each plaintiff presented evidence of other links to Wisconsin such as membership in community organizations, investments in Wisconsin ventures and long-term housing arrangements. All three plaintiffs were initially denied reclassification in 1971. After varying periods of time, however, plaintiffs Thiel and Lister were reclassified as residents and were entitled to resident tuition. Their claims for damages are derived from that interval between their ultimate reclassification as bona fide residents and their initial application for resident status. Plaintiff Cooney was never reclassified and his claim is based upon the denials of his repeated applications during his enrollment.

### II. Due Process

Plaintiffs' due process argument has three prongs. First, plaintiffs allege that the hearing on their applications for reclassification was so "arbitrary and meaningless" as to constitute no hearing at all. Second, plaintiffs allege that the defendants violated plaintiffs' due process rights by failing to inform them of the standards guiding the defendants in evaluating the residence question. Finally, plaintiffs challenge the failure of the defendants to state

1. A prior opinion of this court resolved preliminary questions relating to jurisdiction and abstention. *Lister v. Lucey*, 575 F.2d 1325 (7th Cir. 1978). A more complete history of this lengthy litigation can be found in that opinion.

2. The fourth plaintiff before the district court, Paul A. Turley, has chosen not to appeal the ruling of the district court.

3. The statute has been subsequently modified in a substantial fashion. *Compare* Wis.Stat. § 36.27 *et seq.* (1977).

4. As construed, this portion of the statute is clearly constitutional. *See Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

the reasons why they denied plaintiffs' applications for reclassification.

■ As to the hearing, mere superficial contradictions between announced criteria and the pattern of decisions in a few isolated cases [5] is insufficient to state a due process claim. This is particularly true where the issue before the hearing is as nebulous as a student's intent to be a resident of a state. All three plaintiffs filed written submissions, made oral presentations and asked questions at the hearing on their applications for resident status.[6] The presentation of this individualized evidence, including an opportunity for defendants to observe the demeanor of the plaintiffs, leaves us reluctant to conclude that the pattern of decisionmaking was the result of administrative caprice. We think it more likely the product of a reasoned analysis of a question incapable of purely objective definition. *Compare Hooban v. Boling*, 503 F.2d 648, 652 (6th Cir. 1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975).

■ Plaintiffs also challenge the failure of the defendants to disclose the standards used to determine residency for tuition purposes. Plaintiffs recognize, however, that the ultimate issue that the defendants were considering was "whether plaintiffs were residents because of their intention to remain in Wisconsin," Appellants' Brief at 24, or "whether they were primarily in Wisconsin for the purpose of attending the University." Appellants' Brief at 26. The Wisconsin statute itself provides some guidance by explicitly requiring consideration of Wisconsin tax returns, voter eligibility, motor vehicle registration and employment. Wis. Stat. § 36.16(3) (1971). Plaintiffs were given no guidance beyond the provisions of the statute. Defendant Hoover maintained that no guidelines were issued because publication would only enable students without the requisite intent to meet any guideline, rendering such a guideline less effective. Hoover Deposition, December 29, 1971, at 34.

We agree with the district court, however, that no additional guidance was necessary as a matter of constitutional law. The issue is one of intent and no catalogue of objective criteria could, in most circumstances, be conclusive or determinative. *Hooban*, 503 F.2d at 652. Plaintiffs were not hindered in their presentation of relevant evidence. Indeed, the extensive presentation of evidence of community involvement and permanent ties to Wisconsin appears to have been decisive in the two cases where resident status was eventually granted. There is no allegation that improper or incorrect evidence was considered. *Compare Gonzales v. United States*, 348 U.S. 407, 413, 75 S.Ct. 409, 412, 99 L.Ed. 467 (1955). When discussing the Connecticut approach to this question, the Supreme Court quoted approvingly from an unreported opinion of the Connecticut Attorney General:

In reviewing a claim of in-state status, the issue becomes essentially one of domicile. In general, the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning. This general statement, however, is difficult of application. Each individual case must be decided on its own particular facts. In reviewing a claim, relevant criteria include year-round residence, voter registration, place of filing tax returns, property ownership, driver's license, car registration, marital status, vacation employment, etc.

*Vlandis v. Kline*, 412 U.S. 441, 454, 93 S.Ct. 2230, 2237, 37 L.Ed.2d 63 (1973). As Wisconsin's approach does not differ materially from that set out above, we feel compelled to find no violation of due process in this regard. There is every indication that plaintiffs were given an adequate opportunity to be heard at a "meaningful time and in a meaningful manner." *Mathews v. El-*

---

5. During the period in question, 488 reclassification appeals were heard.

6. Plaintiffs do not contend that they were prevented from submitting any pertinent evidence at the hearings.

*dridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

Plaintiffs' final due process allegation challenges the failure of the defendants "to give adequate reasons for refusals to classify persons as residents." Second Amended Complaint, ¶ 26(d). The district court failed to rule on this specific allegation, apparently because it felt that the question duplicated that presented by the failure to inform plaintiffs of the residency standards. Although we express no opinion on the merits of this claim, there are substantial differences between the failure to disseminate standards and the failure to provide an explanation for an adverse decision in an individual case. *See Willner v. Committee on Character and Fitness,* 373 U.S. 96, 105, 83 S.Ct. 1175, 1181, 10 L.Ed.2d 224 (1963). We feel that these differences require a remand to allow the district court to consider this claim at greater length.

### III. Equal Protection

■ Plaintiffs have alleged 6 separate equal protection claims based upon 6 exemptions in § 36.16 that treat certain non-residents as residents for tuition purposes. Five of the exemptions involve discrimination on the basis of classes only entitled to scrutiny as to whether there is a rational basis for the classifications. *See, e. g., Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911); *Fenster v. Schneider,* 636 F.2d 765, 767–68 (D.C.Cir.1980); *Hooban,* 503 F.2d at 650.[7] Plaintiffs' arguments regarding these five classifications are *extremely* conclusory and vague. Little or no attempt has been made to analyze each of the sections at issue. Essentially, plaintiffs rely on the assertion that it is unreasonable to discriminate against residents in favor of non-residents.[8] With no more than this to guide the district

court, we think that the district court properly ruled that plaintiffs have failed to meet their burden of showing that the exemptions are not reasonably related to legitimate state interests. Valid state interests are involved in all of the challenged exemptions. Indeed, the exemptions for certain needy and worthy students and scholarship athletes appear to involve no more than accounting decisions regarding scholarship allocations. Certainly, the exemptions do not exhibit a sufficient absence of a rational basis to render the statute unconstitutional.

Plaintiffs' most substantial equal protection claim involves § 36.16(1)(ae). That section provides for automatic resident status for a non-resident "female who marries a bona fide resident for as long as she continues to reside in Wisconsin." Wis.Stat. § 36.16(1)(ae) (1971). There is no dispute that this exemption would not apply to a similarly situated male non-resident. Hoover Deposition, December 29, 1971, at 30.

■ The question in the instant case, however, is whether these plaintiffs are similarly situated. The district court ruled that they were not and dismissed this allegation for lack of standing. Clearly, this was correct with respect to plaintiffs Thiel and Lister, neither of whom were ever married to female residents of Wisconsin (as defined in § 36.16).

■ Plaintiff Cooney was married to a non-resident when he was initially classified for tuition purposes. His wife, also a university student, was later granted reclassification as a resident. Cooney thus bases his standing upon his wife's reclassification after their period as non-residents. The district court construed the statutory exemption to apply only to non-residents who

---

7. The five provisions are: § 36.16(1)(ab) (dependents of non-resident members of the armed forces stationed in Wisconsin); § 36.16(1)(d) (limited number of needy and scholastically worthy non-residents); § 36.16(1)(e) (non-resident dependents of parents employed full-time in Wisconsin where state of residence has income tax reciprocity) (repealed by Chap. 125, laws of 1971 in a manner apparently not affect-

ing plaintiffs' allegations); § 36.16(2) (state legislators' recommendation); and § 36.16(4) (tuition remissions for non-resident scholarship athletes).

8. We also note that plaintiffs have stated the issue incorrectly. The exemptions classify some *non-residents* differently from other non-residents.

marry persons classified as residents at the time of the marriage. Under this interpretation, Cooney has no standing. The district court's construction is eminently reasonable and, so construed, the exemption is in accord with valid state interests in granting resident tuition to dependents and family members of state residents. *Hooban*, 503 F.2d at 651. We therefore, agree with the district court that Cooney has no standing to challenge § 36.16(1)(ae). Unlike the plaintiff in *Orr v. Orr*, 440 U.S. 268, 272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979), Cooney would not be benefitted by a sexually neutral construction of the statute.

█ Finally, plaintiffs assert that the state may not classify as non-residents persons who are residents of the state for all other purposes. With apologies to Gertrude Stein, a resident is not a resident is not a resident. Resident status necessarily varies with the state program at issue. A person may well be a resident for taxation or voting determinations and yet fail the essential question in the context of the instant case, i. e., whether the person came to the state "solely for educational purposes...." *Vlandis*, 412 U.S. at 453–54, 93 S.Ct. at 2237. The duration of a non-resident's enrollment in a state university may necessarily qualify him or her for various state privileges and responsibilities allocated on the basis of residence but may leave the "intent" question unresolved. Accordingly, we find no equal protection infirmity in this aspect of defendants' practices.

Affirmed in Part, Vacated and Remanded in Part.