**WASTE AID SYSTEMS, INC., a
Florida corporation, Plaintiff,**

v.

**CITRUS COUNTY, FLORIDA, a subdivision of the State of Florida; Craig Hunter, County Administrator; and E.L. Dougherty, Citrus County Engineer, Defendants.**

No. 83–81–Civ–Oc–14.

United States District Court,
M.D. Florida,
Ocala Division.

June 11, 1985.

John Hubbard, Frazer & Hubbard, Dunedin, Fla., for plaintiff.

Andrew G. Pattillo, Jr., Russell Lapeer, Ocala, Fla., for defendants.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case came on to be heard on cross motions for summary judgment. Plaintiff's Motion for Partial Summary Judgment was filed on February 19, 1985, and defendants responded in opposition on March 20, 1985. Defendants' Renewed Motion for Summary Judgment was also filed on February 19, 1985. A hearing on the parties' motions was held on March 20, 1985, at which time the Court heard the oral argument of counsel. The parties agree that the following issues of liability are ripe for determination by the Court: (1) whether a ban against the acceptance of out-of-county waste at a county's landfill violates the equal protection clause of the United States Constitution; and (2) whether imposition of such a ban deprives the plaintiff of his constitutional right to due process, thus giving rise to a private cause of action under 42 U.S.C. § 1983.

## FINDINGS OF FACT

Pursuant to the parties agreed facts in the Pretrial Stipulation, filed on March 20, 1985, and their Stipulation of Facts, filed on March 6, 1985, the Court finds the following facts are not in dispute:

1. Plaintiff is a corporation organized and existing under the laws of the State of Florida with offices in the City of New Port Richie, Florida.

2. Defendant Citrus County, Florida (hereinafter "Citrus County") is a political subdivision of the State of Florida.

3. Defendant Craig Hunter was, at all times material to this action, employed as the County Administrator of Citrus County, Florida.

4. Defendant E.L. Dougherty (hereinafter "Dougherty") is, and was at all time material to this action, employed as the County Engineer of Citrus County.

5. Plaintiff is engaged in the business of collecting, hauling, and disposing of solid waste, serving residential and commercial customers located in Pasco County, Florida and serving commercial customers in Hernando and Pinellas counties.

6. Citrus County owns and operates a solid waste disposal landfill located within the geographical borders of Citrus County, Florida.

7. Plaintiff used the Citrus County landfill for the disposal of solid waste during April and May 1983. Plaintiff deposited $9,000.00 with Citrus County as a users' tipping fee prior to plaintiff's use of the landfill; and upon imposition of the ban by Citrus County, this deposit was refunded to plaintiff.

8. There is no apparent difference in the nature or quality of solid waste collected within Citrus County and the solid waste collected by plaintiff outside of Citrus County.

9. At a regular meeting of the Citrus County Board of Commissioners (hereinafter "Board") on April 26, 1983, the Board voted unanimously to ban the use of the Citrus County landfill to anyone bringing solid waste from outside of the boundaries of Citrus County, and to accept only solid waste collected in Citrus County at the landfill. The ban was not to become effective until May 3, 1983. A notice dated April 26, 1983, was sent by Dougherty to all users of the Citrus County landfill. The next regular meeting of the Board was scheduled for May 3, 1983.

10. Citrus County's reasons for banning the deposit of waste collected outside its boundaries at its landfill were: (a) to conserve landfill space in order to prevent overcrowding and threats to health, safety, and welfare of the citizens of Citrus County; (b) to avoid unnecessary proliferation of landfills in order to prevent contamination of the ground water supply upon which the citizens of Citrus County are dependent; and (c) to prevent economic hardship and additional expense to the citizens of Citrus County in subsidizing solid waste disposal from other counties.[1]

11. Before the May 3, 1983, meeting, plaintiff, by its attorneys, presented to the County Attorney for Citrus County a brief setting forth the legal opinions and position of plaintiff's attorneys in opposition to the proposed ban on the acceptance of solid waste collected from outside of Citrus County. The ban did not become effective May 3, 1983.

12. At the regular meeting on May 3, 1983, the Board reconsidered the question of denying acceptance of solid waste collected from outside of Citrus County. A public hearing was held at that meeting and plaintiff's corporate secretary, William R. Peterson, Jr., appeared along with plaintiff's attorney of record in this case, Anne Williams, to argue against the ban. Mr. Peterson addressed the Board advising that

---

1. This fact was presented in defendants' statement of their case in the Pretrial Stipulation; it was not stipulated to in that document. The Court, however, at the hearing on March 20 questioned plaintiff's counsel regarding this assertion and counsel at that time accepted this fact as true for purposes of the summary judgment. *See also* Affidavits of Board members filed on May 29, 1984.

plaintiff traveled from Pasco County to Citrus County to dump solid waste at the Citrus County landfill because the Citrus County road system was better; the Citrus County landfill was better; and the use of the Citrus County landfill was more cost effective for plaintiff. At that time, the Board stayed the effect of the ban, and scheduled further reconsideration of it for the Board's next regular meeting on May 17, 1983.

13. At the May 17, 1983, meeting, the proposal to refuse acceptance of solid waste collected from outside Citrus County was considered once again. At that meeting, plaintiff's attorney, Anne Williams, represented plaintiff in addressing the Board and expressed her opinions and views on behalf of plaintiff that the proposed ban was unconstitutional. She suggested that plaintiff would seek redress and relief from such a decision by an action in the federal courts.

14. Following that presentation by plaintiff's attorney, the Board voted unanimously to ban the acceptance at the Citrus County landfill of solid waste collected from outside of Citrus County; and the Board voted unanimously as well to make that decision effective one week later, May 24, 1983. The Board rejected as well a request by a city councilman of the City of Dunnellon, Florida to make an exception to the ban on solid waste collected in Citrus County, to allow the City of Dunnellon (located in Marion County, Florida) to use the Citrus County landfill.

15. Plaintiff had continuous use, without interruption, of the Citrus County landfill, for the deposit of solid waste collected outside of Citrus County until May 24, 1983, when the ban became effective.

16. On June 12, 1984, the Board adopted Ordinance No. 84–04 which included, among its prohibitions, a proscription against "any collector [disposing] of solid waste in the county's solid waste disposal facility if said solid waste was generated and/or collected outside of the boundaries of Citrus County."

17. The ban imposed by Citrus County has had an impact on the economic and business interests of plaintiff.

## CONCLUSIONS

The parties further agree on the two issues to be determined by the Court and the applicable law. The first issue is whether the Citrus County ban violates the equal protection clause of the fourteenth amendment. *See* Second Amended Complaint at Count I. The second issue to be resolved is whether imposition of the ban has deprived the plaintiff of due process of law in violation of 42 U.S.C. § 1983. *Id.* at Count II. The Court will discuss each of these issues, respectively.

### Equal Protection

■ The plaintiff concedes that Citrus County's ban on accepting waste generated outside the county at the landfill is neither based on suspect criteria nor restrictive of fundamental rights. *See* Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment at 1. A court reviewing a classification that neither restricts fundamental rights nor is based on suspect class need only determine whether the classification passes the test of mere rationality. *Exxon Corporation v. Eagerton*, 462 U.S. 176, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983). This "lenient" standard looks to whether the classification bears a rational relationship to a legitimate public purpose which it is intended to achieve. *Id.; Western & Southern Life Insurance Company v. State Board of Equalization of California*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981).

Legitimate Public Purpose

■ Initially, the plaintiff asserts that the purpose of Citrus County's ·ban is in fact to hoard a natural resource (the landfill) to the exclusion of all those residing outside the county. Relying on a line of commerce clause cases which found such a governmental goal impermissible, the plaintiff asks this Court to find Citrus County's

objective in effecting the ban an illegitimate public purpose under the equal protection clause. *See, e.g., City of Philadelphia v. New Jersey,* 437 U.S. 617, 628, 98 S.Ct. 2531, 2537, 57 L.Ed.2d 475 (1978). The Court, however, finds the cases relied on by the plaintiff inapplicable to this case. Determining the propriety of government action under the commerce clause requires examining the facts in a wholly different legal context than under the equal protection clause. *See, e.g., Metropolitan Life Insurance Company v. Ward,* — U.S. —, —, 105 S.Ct. 1676, 1682–84, 84 L.Ed.2d 751 (1985). Further, the Court finds that, even if the landfill is a natural resource, Citrus County simply is not "hoarding" it. Unlike the cases cited by the plaintiff, Citrus County has not forbidden either the passage of out-of-county waste across its borders or the deposit of such waste at any landfill in Citrus County except for the one involved in this case.[2]

The Court agrees with defendants that the goals sought by invoking the ban are legitimate. *See* Findings of Fact at paragraph 10. The State of Florida has delegated to Citrus County the power and responsibility to "[p]rovide and regulate waste and sewage collection and disposal...." Fla.Stat. §§ 125.01(1)(k), 163.-3167(1)(a)–(d), 163.3177(6)(c). Maintaining an available landfill is integral to Citrus County's providing efficient and safe waste disposal for its citizens. By ensuring that the landfill is available to its citizens, Citrus County prevents waste generated in the county from being left on roadsides, walkways, private yards, and other areas in which the county takes pride. Reserving the landfill for its citizens also avoids burdening other counties with Citrus County's waste. This, in turn, obviates the additional costs Citrus County would incur transporting waste for disposal elsewhere— costs which would ultimately be borne by the citizens of Citrus County. Having found the Citrus County ban is aimed at a legitimate public purpose, the conservation of the landfill for the county's citizens, which will effect health, economic, and aesthetic benefits, the Court need only determine whether the ban is a rational means of achieving that goal.

Rational Means

 A classification by a governing entity will be sustained if the legislative body "could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Exxon,* 103 S.Ct. at 2308; *Minnesota v. Clover Leaf Creamery Company,* 449 U.S. 456, 470, 101 S.Ct. 715, 727, 66 L.Ed.2d 659 (1981). "[C]ourts are not empowered to second-guess the wisdom of state policies." *Western & Southern Life,* 451 U.S. at 670, 101 S.Ct. at 2084. Whether, in fact, the particular classification will accomplish its objective is not the question but instead whether the legislative body could rationally have believed and decided that the particular classification chosen would promote the desired purpose. *Id.* at 671–72, 101 S.Ct. at 2084–2085.

 The Board determined it was necessary to limit access to the landfill in order to slow the rate of its depletion as an available waste site. *See* Affidavits of Boardmembers, filed on May 29, 1984. Citrus County is obligated to provide waste disposal for its citizens now as well as in the long term. By prohibiting only out-of-county waste at its landfill, the Board has ensured that the county's residents will have a place to dispose of their waste now

---

**2.** Even viewed under a Commerce Clause examination, the facts in this case do not support a finding that the defendant is hoarding a natural resource. In the primary commerce clause case relied on by the plaintiff, *Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), "hoarding" occurred when the defendant state forbade entry of waste generated outside the state, thus closing "its borders to all waste from other States." *Id.* at 619. Citrus County has neither refused access to all its landfills nor forbidden the transportation of out-of-county waste through its borders. The county has not closed its borders to out-of-county waste but has only limited its available landfills. The landfills in Citrus County are not, therefore, a hoarded resource. The plaintiff may utilize other landfills in the county, though the most cost-efficient one may be foreclosed to it.

and in the future. Additionally, by applying the ban only to this one landfill, Citrus County has not forbidden either the transportation of foreign waste across its borders or the disposal of such waste at other than this one landfill. The Court finds that distinguishing waste generated outside Citrus County from waste generated within the county is rational in view of the responsibilities and specific goals of Citrus County. Having found the goals of Citrus County are directed to a legitimate public purpose and that the means of achieving those goals is rational, the Court will grant defendants' Motion for Summary Judgment as to Count I of the Second Amended Complaint.

### Due Process of Law

 The plaintiff's due process claim is brought pursuant to 42 U.S.C. § 1983. The two essential elements of a section 1983 cause of action are: (1) "the conduct complained of was committed by a person acting under color of state law;" and (2) "the conduct deprived a person of rights secured by the Constitution or laws of the United States." *Morrison v. Washington County, Alabama*, 700 F.2d 678, 682 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Section 1983 provides only that deprivations of "rights, privileges or immunities secured by the Constitution and the laws" give rise to private causes of action. *Dollar v. Haralson County, Georgia*, 704 F.2d 1540, 1543 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 399, 78 L.Ed.2d 341 (1984). Such rights secured by the Constitution and the laws include those property rights which "are created and their dimensions ... defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Defendants' position is that the plaintiff has failed to adequately demonstrate a property or liberty interest that has been infringed and that, even if the plaintiff had a property interest, its right to due process has not been violated. The plaintiff responds that state statutes which provide specified procedures substantively restricting Citrus County's ability to legislate have created a property interest, citing *Parks v. Watson*, 716 F.2d 646, 657 (9th Cir.1982). Plaintiff then asserts that it was deprived of that statutory property interest without due process of law. The Court initially finds that *Parks* does not sufficiently support the plaintiff's position.

In *Parks*, the Ninth Circuit recognized that "there is some debate whether state statutes providing for particular procedures amount to 'entitlements' protected by due process," concluding that "in this circuit ... they do." *Id.* at 656. The court was asked to determine whether the plaintiff had a property interest in his application to have certain platted city streets vacated in order to proceed with its building project. The court noted that the city council was required to hear any petition where there was no apparent reason not to allow the vacation. Pursuant to a state statute governing the council's actions regarding vacating petitions, the council was required to make certain determinations. If the council found that the owners of the area consented, that there was notice, and that the vacation would not prejudice the public interest, the council was required to vacate the street without discretion. *Id.* at 656–57. The court ruled that the state statute created a property interest because "the statutory scheme placed significant substantive restrictions on the agency's actions" regarding the plaintiff's request to have streets vacated. *Id.* at 657.

 The plaintiff's reliance on *Parks* for the proposition that Florida statutes have created a similar property right in the dumping of waste at the Citrus County landfill reflects too sweeping a generalization of the holding therein. The facts in this case do not reveal a statutory scheme comparable to that in *Parks*. The specific statute relied on herein by the plaintiff requires that certain procedures be followed when the Board enacts an ordinance

rather than a resolution.[3] *See* Fla.Stat. § 125.66(2). The statute restricts the Board's actions in enacting an ordinance generally but does not purport to recognize a property interest of the plaintiff with the specificity of the statute in *Parks.*

■ The focus in *Parks* was the restrictions on the legislative body's decision-making process which consequently created a legitimized expectation. Section 125.66(2) does not in any way require that the Board make a determination as to the legitimacy of plaintiff's alleged interest in the landfill or require that the Board then act to secure that interest for the plaintiff. In *Parks,* the street vacation was a property interest that could come to fruition only by the working of the statute. The statute now before the Court does not rise to the level of legitimizing an expectation. *See, e.g., Parks,* 716 F.2d at 657. Therefore, the Court finds the plaintiff in the case *sub judice* has failed to demonstrate that any Florida statute has created a property interest for the plaintiff in the Citrus County landfill.

■ Even if the plaintiff had demonstrated a legitimate property interest, the Court finds that the requirements of notice and opportunity to be heard prior to the alleged deprivation have been met. A notice of the ban dated April 26, 1983, was sent to the plaintiff. Findings of Fact at paragraph 9. Prior to the ban becoming effective on May 3, 1983, the plaintiff submitted its legal brief in opposition to the Board's action. *See id.* at paragraph 11. On May 3, 1983, the Board held a public hearing at which the plaintiff's corporate secretary and counsel of record appeared and argued in support of plaintiff's posi-

tion. *Id.* at paragraph 12. The Board postponed the ban's effective date pending further hearings on the matter. A second public hearing was held on May 17, 1983, and plaintiff's counsel of record again stated plaintiff's position that the ban was unconstitutional. *Id.* at paragraph 13. Only after plaintiff's counsel was heard on May 17 did the Board finally approve the ban, setting its effective date for May 24, 1983. The Court finds that even if the plaintiff had a property interest in the landfill, there has not been a deprivation of any such right without adequate due process of law. Therefore, the Court will grant defendants' Motion for Summary Judgment as to Count II of the Second Amended Complaint.

Accordingly, it is

ORDERED:

1. That plaintiff's Motion for Partial Summary Judgment, filed herein on February 19, 1985, is denied.

2. That defendants' Motion for Summary Judgment as to Count I and Count II of the Second Amended Complaint, filed herein on February 19, 1985, is granted.

3. That the Clerk of the Court shall enter Judgment for the defendants as to Counts I and II of the Second Amended Complaint.

---

**3.** Section 125.66(2), Florida Statutes, states:

The regular enactment procedure shall be as follows: The board of county commissioners at any regular or special meeting may enact or amend any ordinance, except as provided in subsection (5), if notice of intent to consider such ordinance is given at least 15 days prior to said meeting, excluding Sundays and legal holidays. Such notice shall be made by the clerk of the board of county commissioners and shall be kept in a separate book which shall be open to public inspection during the regular business hours of his office. Certified copies of ordinances or amendments thereto enacted under this regular enactment procedure shall be filed with the Department of State by the clerk of the board of county commissioners within 10 days after enactment by said board and shall take effect upon receipt of official acknowledgement from that office that said ordinance has been filed. However, any ordinance may prescribe a later effective date.