Mr. Tom Gardner Executive Director Department of Natural Resources Marjory Stoneman Douglas Building 3900 Commonwealth Boulevard Tallahassee, Florida 32399-3000
Dear Mr. Gardner:
You have asked my opinion on the following questions:
 (1) Would it be legally permissible for the Department of Natural Resources to implement a differential fee system whereby nonresidents of Florida are charged more for access and use of the state park system than residents?
 (2) If so, what justification must the department provide and what legal restrictions would apply?
It is my opinion that the Department of Natural Resources, under the authority granted pursuant to s. 258.014, F.S., may implement a differential fee system whereby nonresidents of the state are charged more for access and use of the state park system than residents. Any such fee differential, however, would need to have a rational basis. Thus, the Department would be required to show that a valid state purpose existed for distinguishing between residents and nonresidents of the state and that the differential fee system reasonably related to carrying out that purpose.
As the answer to your first question necessarily includes comment on the second question, the two questions will be answered together.
The Division of Recreation and Parks of the Department of Natural Resources may charge reasonable fees, rentals or charges for the use of facilities in state parks.[1] Collected fees, rentals and charges are deposited in the State Treasury to the credit of the "State Park Trust Fund." The fund is used by the division for, among other things, the administration, improvement and maintenance of state parks.[2] There is presently no provision for differential fees for residents and nonresidents.[3]
This office in AGO 76-124 previously stated that a municipality seeking to impose higher fees on nonresidents using municipal recreational facilities would have to show that the differential would have to reflect, and be substantially related to, all economic factors. Additionally, a definite financial burden on the municipality in park maintenance costs clearly justifying a higher fee for nonresidents would have to be shown.
Unlike AGO 76-124, in which a municipality wished to impose higher fees upon all nonresidents of the municipality (including citizens of the state), your question concerns the imposition of higher fees for access and use of the state park system on nonresidents of the state. As stated in 64 C.J.S. Municipal Corporations, s. 1818b., "[o]rdinarily land held by a municipality for park purposes is held for the benefit of the people of the state at large and not only for the benefit of local inhabitants. . . ." (e.s.)
This office recognized such a concept in considering whether a municipality could exclude nonresidents from municipal parks. In AGO 74-279 this office stated that public parks are held not for the sole use of the people of a particular community but for the use of the general public which the Legislature represents. As such, they are of more than local interest and become a concern of the state.[4]
Clearly, any classification based upon residency would have to comply with the mandates established by the Equal Protection Clause and the Privileges and Immunities Clause of theFourteenth Amendment as well as the Interstate Commerce Clause of the United States Constitution.[5]
In those situations where no fundamental right or suspect classification is involved, the rational basis test is applicable in determining whether state action violates the United States Constitution.[6] This test requires only that state action bear some reasonable relationship to a legitimate state purpose.[7]
In determining if state action is constitutional under this standard, the question that must be resolved is whether the governing body could rationally have believed and decided that the particular classification chosen would promote a legitimate state purpose.[8]
Classifications based upon residency involve no suspect class nor fundamental right.[9] Case law makes it clear that a state, under certain conditions, may prefer its own residents over the residents of other states or condition the enjoyment of nonresidents in recreational activities created or supported by the state.
For example, in Vlandis v. Kline,[10] the U.S. Supreme Court recognized that a state has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its bona fide residents to attend such institutions on a preferential tuition basis.[11] The courts have held that classifying students as residents or nonresidents for tuition purposes does not affect a fundamental right.[12] Instead the courts have found that such classifications are reasonably related to a legitimate state interest, that of cost equalization between those who have contributed to the state's revenues through taxes and those who have not.[13]
Fee differentials for residents and nonresidents have been upheld in other areas. In Baldwin v. Fish Game Commission of Montana,[14]
the U.S. Supreme Court upheld a higher hunting license fee imposed upon nonresidents by the State of Montana.[15] The Court stated that, where the opportunity to enjoy a recreational activity is created or supported by a state, where there is no nexus between the activity and any fundamental right, and where by its very nature the activity can be enjoyed by only a portion of those who would enjoy it, a state may prefer its residents over the residents of other states or condition the enjoyment of the nonresident upon such terms as it sees fit.[16]
Lands held in the name of the Board of Trustees of the Internal Improvement Trust Funds are held in trust for the use and benefit of the people of the state.[17] I am not aware of any judicial determination which holds that this responsibility extends to the nonresidents of the state. It is also the policy of this state to conserve and protect the natural resources and scenic beauty of the state.[18]
Accordingly, the Department of Natural Resources may implement a state park fee system, distinguishing between residents and nonresidents of the state, provided it determines that a valid state purpose exists and the implementation of such a fee system reasonably relates to carrying out that purpose.
Sincerely,
Robert A. Butterworth Attorney General
[1] Section 258.014, F.S. See, s. 20.25(1), F.S., providing that the head of the Department of Natural Resources is the Governor and Cabinet.
[2] Section 258.014, F.S.
[3] Rule 16D-2.002(11)(b), F.A.C., providing a fee schedule for the use of state park facilities.
[4] And see, 38 Fla.Jur.2d Parks and Recreation Centers s. 10.
[5] See, s. 1, Amend. XIV, U.S. Const. (no state shall make or enforce any law which abridges the privileges or immunities of the citizens of the United States, nor deny to any person within its jurisdiction the equal protection of the laws) and cl. 3, s. 8, Art. I, U.S. Const. (Congress empowered to regulate commerce among the several states). And see, AGO's 74-279 and 76-124 recognizing that any resident-nonresident classification taken by a municipality must comply with these constitutional provisions.
[6] See AGO's 74-279 and 76-124. Cf., City of Maitland v. Orlando Bassmasters Association of Orlando, Florida, Inc., 431 So.2d 178
(5 D.C.A.Fla., 1983), in which the district court found no rational basis in a municipal ordinance which prohibited nonresidents of the city from obtaining parking permits for boat trailer spaces in a municipal lakefront park; rather, the only basis for the ordinance was the fact that residents desired an assured parking space near the municipal boat ramp.
[7] See, Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla. 1986) (statutory classification that is neither suspect nor invades a fundamental right must only be rationally related to a legitimate state interest); Markham v. Fogg, 458 So.2d 1122 (Fla. 1984), citing In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980) (rational basis or minimum scrutiny test generally employed in equal protection analysis requires only that a statute bear some reasonable relationship to a legitimate state purpose; incidental result of inequality or lack of mathematical precision in drafting of the statute will not result in its invalidity).
[8] Waste Aid Systems, Inc. v. Citrus County, Florida, 613 F. Supp. 102,106 (M.D.Fla., 1985).
[9] See, AGO's 74-279 and 76-124.
[10] 412 U.S. 451 (1973). And see, Hayes v. Board of Regents, 495 F.2d 1326 (6 Cir. 1974).
[11] See, s. 240.1201, F.S., and F.A.C. Rule 6C-7.005, defining Florida resident for purposes of assessing fees classified as resident or nonresident, and Weitzel v. State, 306 So.2d 188 (1 D.C.A.Fla., 1974), concluding that the legislature intended to grant the Board of Regents "full power and authority" to prescribe rules, policies and regulations incident to tuition fees, differentiating between citizens of the state and students from other states.
[12] 56 A.L.R.3d s. 3(a), p. 651.
[13] Id., at s. 2(b), p. 648.
[14] 436 U.S. 371 (1978).
[15] Compare, s. 372.57, F.S. (1986 Supp.), and s. 1, Ch. 87-261, Laws of Florida, providing fee differential for hunting and fishing licenses for residents and nonresidents.
[16] 436 U.S. at 378, citing Montana Outfitters Action Group v. Fish Game Commission, 417 F. Supp. 1005, 1010 (Mont. 1976).
[17] Section 253.001, F.S., provides that all lands held in the name of the Board of Trustees of the Internal Improvement Trust Fund shall continue to be held in trust for the use and benefit of the people of the state pursuant to s. 7, Art. II, and s. 11, Art. X, State Const.
 Section 7, Art. II, State Const., provides that "[i]t shall be the policy of the state to conserve and protect its natural resources and scenic beauty." Section 11, Art. X of the Constitution provides in part that "title to lands under navigable waters, within the boundaries of the state, which have not been alienated, including beaches below mean high water lines, is held by the state, by virtue of its sovereignty, in trust for all the people."
[18] Section 7, Art. II, State Const.