No. 55,448

IN THE MATTER OF OFFICER GREGORY C. HALFORD, *Appellee,* v. THE CITY OF TOPEKA, a Municipal Corporation; THE TOPEKA POLICE AND FIRE CIVIL SERVICE COMMISSION, an Agency of the City of Topeka, *Appellants.*

(677 P.2d 975)

Opinion filed February 18, 1984.

*Henry R. Cox,* assistant city attorney, argued the cause and *Lori M. Callahan,* legal intern, was with him on the brief for appellants.

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Plaintiff Gregory C. Halford, a Topeka police officer, was suspended on December 17, 1980, for 15 days without pay by the defendant City's Chief of Police Fred Howard. The suspension was entered without a hearing. At the time of the suspension, the chief of police sent a letter to the defendant Topeka Police and Fire Department Civil Service Commission asking for plaintiff's termination and the Commission to continue plaintiff's suspension until it issued its final order. The

Commission issued no order continuing the suspension in the interim period. Hearing was had on the merits of the charges and the Commission issued its order on February 12, 1981, demoting plaintiff one rank and suspending plaintiff for 90 days without pay. Plaintiff did not work for the police department and was not paid for the interim period between the expiration of the 15-day suspension and the time the Commission issued its final order, a period of approximately 45 days. The Commission credited plaintiff with these days he had been off work without pay, which left approximately 45 days of the Commission's 90-day suspension to be served (which has since been satisfied). Plaintiff appealed to the district court which held the demotion was lawful, but the two suspensions without pay (totalling 105 days) were unlawful, thereby entitling plaintiff to 105 days back pay. Defendants City and Civil Service Commission seek appellate review of the judgment of the district court.

The facts giving rise to disciplinary actions being taken against Officer Halford may be summarized as follows. Plaintiff was a corporal with the traffic safety unit of the Topeka Police Department at all times in question. Additionally, he served extra shifts (for additional pay) in the specially funded Alcohol Safety Action Project (ASAP). Officer Halford usually worked the night shift and his assignment involved being on the streets alone in a police vehicle.

On November 27, 1980, a notice appeared in the Topeka Capital-Journal stating Officer Halford was the defendant in an action filed by the State of Kansas seeking child support. This notice prompted an investigation by a Topeka Police Department internal affairs officer. The following uncontroverted facts were disclosed. Officer Halford was married. Officer Halford had admitted paternity of a child born April 7, 1980, to Carol H., an unmarried woman (Officer Halford had acknowledged paternity in a sworn "Acknowledgement of Paternity" executed on November 25, 1980, and filed in the support action the same day). Carol H. was, at all time pertinent hereto, a PBX operator with the Topeka Police Department. Additionally, the investigation revealed Officer Halford made many trips in uniform to the residence of Carol H. while he was on duty. In any event, when Chief of Police Fred Howard was advised of the results of this investigation, he issued his order suspending plaintiff for 15 days

without pay and sought his termination by the Civil Service Commission, all as previously noted. Other facts will be stated as are necessary in the consideration of particular issues.

The first issue is whether the district court had jurisdiction to review the orders of the Topeka Police and Fire Department Civil Service Commission and the Police Chief relative to the discipline of Officer Halford. This issue is actually a three-pronged challenge to jurisdiction. First, appellants contend plaintiff's failure to plead a jurisdictional basis for his appeal to the district court rendered the appeal fatally defective. We do not agree. It is agreed there is no statute specifically authorizing the appeal herein. Therefore, the appeal to the district court came under K.S.A. 60-2101(d) which provides:

"(d) A judgment rendered or final order made by an administrative board or officer exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal. If no other means for perfecting such appeal is provided by law, it shall be sufficient for an aggrieved party to file a notice that such party is appealing from such judgment or order with such board or officer within thirty (30) days of its entry, and then causing true copies of all pertinent proceedings before such board or officer to be prepared and filed with the clerk of the district court in the county in which such judgment or order was entered."

The appeal filed does not specifically state it is being taken pursuant to K.S.A. 60-2101(d). However, the pleadings filed clearly show it is an appeal rather than an attempted original action. K.S.A. 60-2101(d) is the only statute under which the appeal herein could have been taken. The notice of appeal was filed within the statutory 30-day period. We conclude, under the circumstances herein, the failure specifically to plead the appeal was being taken pursuant to K.S.A. 60-2101(d) did not deprive the district court of jurisdiction to hear the matter.

Appellants herein next contend Officer Halford's appeal to the district court was never perfected and should have been dismissed. This assertion is predicated upon the fact Officer Halford filed his notice of appeal on February 19, 1981 (the date being erroneously asserted by appellants as February 12, 1981), but did not cause copies of the proceedings appealed from to be filed until March 12, 1981. Appellants contend this is not in compliance with K.S.A. 60-2101(d) which requires copies of the proceedings appealed from to be filed with the clerk of the district court. On the same day Officer Halford filed his appeal,

his attorney requested copies of the proceedings before the Commission. We conclude the filing of the copies of the proceedings within a month of the time the order was filed and within three weeks of the filing of the appeal is in compliance with the requirements of K.S.A. 60-2101(d).

Finally, appellants contend Officer Halford's notice of appeal to the district court was void for inadequacy. The notice of appeal clearly specifies what order is being appealed and to whom the appeal is being taken. This point is also without merit.

After considering all jurisdictional challenges asserted by appellants herein, we conclude the district court had jurisdiction to hear Officer Halford's appeal.

The second issue on appeal is whether the district court erred in holding the police chief's 15-day suspension of Officer Halford without pay was unlawful.

The Code of the City of Topeka § 2b-233 (1975), now codified as § 31-203 (1981), states:

"**Departmental Regulations.** The *head of any department may formulate* in writing *reasonable administrative regulations for the conduct of the department* which shall be available to all departmental employees; *Provided,* that *nothing herein shall be construed as granting any department authority to adopt regulations in violation of, or in conflict with, personnel regulations as set out in Chapter 2b, Code of the City of Topeka, 1970,* and amendments thereto. (Ord. 13191, § 2, 1-10-72.)" (Emphasis supplied.)

The Code of the City of Topeka § 2b-235 (1975), now codified as § 31-309 (1981), provides:

"[**Disciplinary Action**]; **Suspension; Discharge.** *Employees who wilfully violate city personnel rules and/or departmental regulations may be suspended without pay for not to exceed 15 calendar days for any given offense; Provided, however, that no person shall be suspended until he first has been given a reprimand* in writing warning him that continuation or repetition of the offense will result in suspension or discharge; *Provided further, that certain offenses, including but not limited to, drinking on the job, assault, wilful refusal to obey an order or offenses of a like nature shall be cause for immediate suspension and filing of charges before the Civil Service Commission.* (Ord. 13191, § 4, 1-10-72.)" (Emphasis supplied.)

Finally, the Code of the City of Topeka § 21-106(c) (1975), now codified as § 34-21(c) (1981), states:

"**Duty Manuals; Regulations.** The *Chief of Police* may, from time to time, *prepare and issue duty manuals* for the members of the Department *and with the approval of the Mayor, the Board of Commissioners or the Civil Service Board, prescribe rules and regulations which pertain to the conduct of the Police*

*Department and performance of duties of its members.* The regulations shall fix and establish lines of authority and designate ranking officers to be in charge of the Department in the absence of the Chief. Any police officer may be required at any time, whether on or off duty, to perform the duties required of him by law or ordinance or orders of the Chief. (R. O. 1947, 19-104; K.S.A. 13-1808, 13-2213.)" (Emphasis supplied.)

The Topeka Police Department Duty Manual (R-000-1) submitted to and approved by the mayor and city commission on April 13, 1976, pursuant to Code of the City of Topeka § 21-106(c) (1975), provides in pertinent part:

"III. PENALTIES

. . . .

"B. A violation of any General Policy, General Rule and Regulation or Procedural Instruction may result in a penalty of:
  1. A written reprimand being placed in the employee's personnel jacket or;
  2. Demotion in rank - Utilized only when the employee's deficiency is a result of not meeting the present job requirements;
  3. *Suspension without pay up to a maximum of fifteen (15) days at the option of the Chief of Police.*
     a. Shift Commanders have the authority to suspend for one (1) day.
     b. Any action above the Shift Commander's authority for disciplinary reasons must be approved by the Division Commander and the Chief of Police.
  4. Infractions which warrant a penalty that exceeds the Chief's authority will be presented to the Civil Service Board in the form of charges by the Chief of Police for Civil Service Board action.
     a. Board action could result in up to ninety (90) day suspension, demotion in rank, or dismissal from the service." (Emphasis supplied.)

The Topeka Police and Fire Department Civil Service Commission specifically found:

"[T]he Rèspondant [*sic*] [Officer Halford] did violate the rules and regulations governing the operation of the Topeka Police Department and is guilty of the following offenses as charged in Chief Howards [*sic*] letter of December 17, 1980.
  1. Adultry [*sic*]
  2. Failure to discharge the faithful and diligent performance of his duties due to the unauthroized [*sic*] activities of a personal nature.
  3. Improper [*sic*] and misuse of a police vehicle in pursuit of his personal activities as refered [*sic*] to in (2) above.

"The Commission further finds that violations as determined by us and stated above constitute conduct unbecoming an officer, and that such actions tend to bring discredit and tarnish the image that the public has a right to expect of the Topeka Police Department.

"The Commission further finds that Respondant [*sic*] is not guilty of the offense as charged of failure to obey a legal order issued by his immediate supervisor."

The Police Department Duty Manual (R-000-1) was adopted and approved by the city commission pursuant to the Code of the City of Topeka § 2b-233 and § 21-106(c) (1975). Section 2b-233 specifically prohibits any department head from formulating regulations in violation of Chapter 2b which includes § 2b-235 limiting suspensions.

It should also be noted the Rules and Regulations of the Police and Fire Department Civil Service Commission of the City of Topeka, Kansas (the commission being established pursuant to K.S.A. 13-2203 *et seq.*) provide:

"Section 25. The *Chief of Police or the Chief of the Fire Department may suspend an employee alleged to have committed offenses including, but not limited to, drinking on the job, assault, wilful refusal to obey an order or offenses of a like nature.* Immediately upon issuing such an order of suspension the Chief of the Police Department or the Chief of the Fire Department shall cause formal sworn charges to be filed with the Secretary of the Civil Service Commission as provided herein." (Emphasis supplied.)

The offenses for which the police chief may suspend an officer under section 25 of the civil service rules are identical to those set forth in the Code of the City of Topeka § 2b-235 (1975).

Defendant City contends the Police Chief's authority to suspend arises from R-000-1, unfettered by the requirements of section 2b-235 of the Code of the City of Topeka.

Section 2b-235 is an ordinance of the City of Topeka. This court has long recognized, as applied to city governing bodies, an ordinance prescribes some permanent rule of conduct of government, to continue in force until repealed. An ordinance is distinctively a legislative act. *Benson v. City of De Soto,* 212 Kan. 415, Syl. ¶ 1, 510 P.2d 1281 (1973). An ordinance is the equivalent of a municipal statute. Black's Law Dictionary 989 (5th ed. 1979). Being the equivalent of a statute, § 2b-235 is superior to city departmental regulations. While an administrative regulation may have the force of law, *Jones v. The Grain Club,* 227 Kan. 148, 150, 605 P.2d 142 (1980), it is always subservient to statutes. Recently in *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 673 P.2d 1126 (1983), this court observed rules and regulations of an adminis-

trative agency, to be valid, must be within the statutory authority conferred upon the agency. Those rules and regulations that go beyond the authority authorized, which violate the statute, or are inconsistent with the statutory power of the agency, have been found void. Administrative rules and regulations to be valid must be appropriate, reasonable and not inconsistent with the law. 234 Kan. at 378-79. See also *Wesley Medical Center v. Clark*, 234 Kan. 13, 18-19, 669 P.2d 209 (1983); *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 771, 648 P.2d 234 (1982).

We conclude the district court did not err in holding the police chief's authority to suspend under R-000-1 was subject to and limited by the Code of the City of Topeka § 2b-235 (1975).

It is uncontroverted no written reprimand was issued to Officer Halford prior to his 15-day suspension. Therefore, in order to be valid, the suspension must come within the "certain offenses" exception of § 2b-235, reproduced for convenience, as follows:

"[C]ertain offenses, including but not limited to, drinking on the job, assault, wilful refusal to obey an order or offenses of a like nature shall be cause for immediate suspension and filing of charges before the Civil Service Commission."

The district court concluded the "certain offenses" proviso of § 2b-235 contemplates a situation in which an immediate suspension is necessary to remove an officer whose presence on the force poses a serious threat to discipline or the police department's ability to function effectively. In *Parton v. City of Topeka*, 1 Kan. App. 2d 18, 561 P.2d 885 (1977), it was held adultery was not one of the "offenses of a like nature" for which immediate suspension was authorized by § 2b-235. The district court found none of Officer Halford's improper activities were "offenses of a like nature" so as to permit immediate suspension by the police chief under § 2b-235. That is, Officer Halford's presence on the force did not pose a serious threat to discipline or the police department's ability to function effectively. The district court then concluded the 15-day suspension was, accordingly, unlawful.

We believe the "certain offenses" proviso clearly relates to misconduct which seriously impairs the officer's ability to function effectively in the discharge of his official duties or which otherwise jeopardizes the discipline or operation of the police

department. We conclude that the district court did not err in finding Officer Halford's misconduct was not within the "certain offenses" proviso of § 2b-235 and that, accordingly, his 15-day immediate suspension without pay was unlawful.

The third issue is whether the district court erred in holding the order of the Topeka Police and Fire Department Civil Service Commission suspending Officer Halford without pay for 90 days was unlawful.

It is conceded Police Chief Howard had no authority to terminate Officer Halford. Chief Howard believed termination was justified and duly requested the Topeka Police and Fire Department Civil Service Commission to terminate Officer Halford after a hearing. Chief Howard further requested the Civil Service Commission to suspend Officer Halford pending the issuance of a final order. The Commission did not issue the requested interim suspension order.

The rules and regulations of the Civil Service Commission provide:

"Section 26. The Board shall take jurisdiction over all complaints alleging misconduct or failure to perform duties constituting grounds for demotion, dismissal or removal, or suspension.

. . . .

"Section 31. If the Board finds by a propounderance [sic] of the evidence that an act of misconduct or failure to perform duties has been committed, the Board may suspend without pay for a period of not more than ninety (90) days, demote in rank, dismiss or remove from the department. If the Board finds that said acts have not been committed, the employee shall be restored to duty with no loss of pay. The action of the Board shall be final." (Emphasis supplied.)

The district court found the Commission's findings of improper conduct on the part of Officer Halford were supported by substantial competent evidence and the Commission's order demoting the officer was within the scope of its authority and therefore lawful. *No appeal has been taken from this determination.* The district court then struck down the Commission's order for a 90-day suspension on the grounds it violated Officer Halford's constitutional right of due process. The district court's rationale in reaching this curious result is difficult to follow. It appears, however, the district court believed Police Chief Howard's improper 15-day suspension somehow vitiated the suspension order subsequently entered by the Civil Service Commission. The district court seems to have utilized the rationale of the

"fruit of the poisonous tree" doctrine applicable to exclusion of improperly acquired evidence in criminal cases. In invalidating the 90-day suspension order the district court appears to have been influenced by the fact the Civil Service Commission, in essence, gave Officer Halford credit on the 90-day suspension for the 45-day period he was off work, without pay, between the expiration of the initial 15-day suspension and the entry of the Civil Service Commission's final order on February 12, 1981.

Officer Halford's 90-day suspension without pay by the Civil Service Commission occurred *after* a full hearing where full due process rights were afforded the officer. We fail to see how the improper 15-day suspension imposed by the police chief in any way limited the Civil Service Commission's authority to impose a 90-day suspension without pay. The order of the Commission was not the result of an appeal from a disciplinary order of the police department. The matter was before the Commission on the police chief's request the officer be terminated. Only the Commission had authority to terminate or suspend for 90 days. The district court did not find the 90-day suspension was an excessive or arbitrary penalty for the officer's misconduct.

We conclude the final order of the Civil Service Commission suspending Officer Halford for 90 days without pay was a valid order. The fact the Commission credited Officer Halford for the 45 days he had not worked and had not been paid between the expiration of the 15-day police chief's order of suspension and the final order of the Civil Service Commission was not improper and in no way invalidated the 90-day suspension order. We therefore conclude the district court erred in holding the 90-day suspension order entered by the Civil Service Commission was unlawful.

The judgment of the district court is affirmed in part and reversed in part with directions to enter judgment in accordance with the opinion.