No. 65,479

MARTIN J. PECK, *Appellee/Cross-Appellant*, v. UNIVERSITY RESIDENCE COMMITTEE OF KANSAS STATE UNIVERSITY, *Appellant/Cross-Appellee*, v. THE KANSAS BOARD OF REGENTS, *Intervenor/Cross-Appellee*.

(807 P.2d 652)

452

*Dorothy L. Thompson*, associate university attorney, argued the cause and was on the briefs for appellant/cross-appellee.

*John Q. Royce*, of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause and was on the briefs for appellee/cross-appellant.

*Ted D. Ayres*, general counsel, argued the case and was on the brief for intervenor/cross-appellee.

The opinion of the court was delivered by

SIX, J.: This is an administrative law case. The focal issue concerns resident/nonresident status for fee purposes at state universities (Regent's Institutions).

Subissues of importance are: (1) judicial review of residence committee decisions; (2) the propriety of the residence committee's decision; (3) the residence committee's interpretation of the applicable law; and (4) the validity of the residency regulations adopted by the Kansas Board of Regents as guidelines for residency determination.

The case comes to us under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* (KJRA).

We have K.S.A. 20-3018(c) jurisdiction as a result of our order of transfer from the Court of Appeals.

Martin J. Peck, a student at Kansas State University (K-State), sought judicial review of the decision of the K-State Residence Committee (Residence Committee). The Residence Committee found that he did not qualify as a resident for fee purposes for the fall semester of 1989.

Peck contended that K.A.R. 88-3-2, the residency regulation adopted by the Kansas Board of Regents is invalid, unreasonable, and unconstitutional. The district court did not agree.

The district court ruled, however, that K-State's action in denying resident status to Peck was not supported by substantial evidence. The finding of nonresidence was set aside and resident status granted. K-State was ordered to reimburse Peck for the difference between resident and nonresident tuition for the fall

semester 1989 and the spring semester 1990. K-State appeals and Peck cross-appeals.

We reverse in part and affirm in part. Our reversal reinstates the decision of the residence committee denying Peck resident status for fee purposes. We affirm the district court on all issues raised by the cross-appeal.

Facts

Martin J. Peck lived in California from his birth in 1968 until 1978. In 1978, he moved to Texas with his parents. Peck attended the University of Texas from September 1986 to December 1987 as a full-time student. He was classified as a Texas resident for fee purposes.

In January 1988, Peck moved to Kansas and began attending K-State.

On August 22, 1989, Peck applied for resident status for fee purposes for the fall semester of 1989. In his application, Peck listed a current address in Manhattan, Kansas, and a permanent address in Cambridge, Kansas. The Cambridge, Kansas, address is that of Peck's maternal grandfather's ranch (Ferguson Ranch).

Peck stated in his residency application that his father lived in San Antonio, Texas, and that his mother lived in San Francisco, California.

Peck also reported in his application that he came to Kansas because: (1) his "significant other" was attending K-State; (2) K-State would accept his credits from the University of Texas, but not his grade point average; and (3) he would be closer to his "family's ranch" in Cambridge, Kansas.

Peck indicated that he had spent the summer of 1988 in Parkville, Missouri. The only employment listed on his application was for the summer of 1988 at the Presbyterian Center in Parkville, Missouri.

In answer to question 13 on the application ("*What are the sources of your financial support?*"), Peck stated that he received financial support: 10.7% from employment in Parkville, Missouri; 17.3% from funds saved prior to his move to Kansas; 42.5% from his grandfather in Wellington, Kansas; and 29.5% from his mother in San Francisco, California.

In response to question 22 on the application ("*Other than being physically present in Kansas, what relationship or obli-*

*gations connect you to the state, making it your permanent home? How long do you plan to remain in Kansas?"*), Peck stated that he will eventually inherit a part of the Ferguson Ranch. Because of the anticipated inheritance, he will always have a residence at Cambridge and will always need to live somewhere fairly close to Cambridge. In reply to another inquiry in question 22 (*"What are your vocational plans after your academic work here is completed?"*), Peck stated, "I plan to attend law school and then practice as an attorney, probably in Kansas City."

Peck also reported in his application that he: (1) registered to vote and voted in Kansas; (2) registered an automobile in Kansas and paid personal property tax in Kansas; (3) insured his automobile in Kansas; (4) acquired a Kansas driver's license; (5) had a checking and savings account in Kansas; and (6) registered with selective service in Kansas.

The K-State registrar notified Peck that Peck's classification would remain nonresident for fee purposes.

Peck appealed to the Residence Committee. He submitted additional evidence including a personal affidavit. He also submitted proof of: (1) his automobile registration and insurance; (2) the fact he may receive mail at the Cambridge address; (3) his voter registration in Cambridge; (4) his selective service registration; and (5) his bank accounts in Wellington, Kansas.

In addition, he submitted an affidavit from his grandfather, William M. Ferguson. The affidavit stated that Peck is a permanent resident of and domiciled at the Ferguson Ranch; that Peck intends to remain a resident of Kansas for the "foreseeable future"; and that, since Peck enrolled at K-State, the majority of Peck's funds have been furnished by Ferguson and Ferguson's wife and by other funds paid to Peck while a resident of Kansas.

Peck's affidavit filed with his appeal from the Registrar's ruling stated, "I am also employed by Rising House Bicycles of Cambridge, Kansas." Peck neither listed this employment on his application form submitted August 22, 1989, nor did he report any income from such employment. No further information was provided regarding this alleged employment. (Rising House Enterprises is listed along with Ferguson Ranch, William M. Ferguson III, and Peck as addressees who may receive mail at the Ferguson Ranch address in Cambridge.)

Peck also submitted the following statement:

"I would like the following on record, in case it may serve as further evidence of my intention to remain in Kansas: I have applied to the University of Kansas School of Law and will apply at the Washburn University School of Law for entrance in the fall of 1990."

Peck appeared before the Residence Committee. By a letter dated the same day as his hearing, Peck was informed that he would continue to be classified as a nonresident for fee purposes. The Residence Committee determined that Peck had not demonstrated his entitlement to resident classification under the regulations of the Kansas Board of Regents. No other reasons were given for the decision.

Peck filed a petition for judicial review of the decision of the Residence Committee under K.S.A. 77-601 *et seq.* He alleged that: (1) the Residence Committee's decision is not supported by substantial evidence; (2) the Residence Committee erroneously interpreted or applied the law; (3) the decision of the Residence Committee was arbitrary, capricious, or unreasonable; and (4) the rules and regulations adopted by the Board of Regents as "Guidelines for the Determination of Residency for Fee Purposes," K.A.R. 88-3-1 *et seq.*, are unconstitutional on their face and, as applied, are inconsistent with law, contrary to law, and are inappropriate, unreasonable, and invalid.

Because Peck challenged the regulations adopted by the Board of Regents, the district court granted the Board's motion to intervene.

After finding each of Peck's other challenges meritless, the district court determined that the Residence Committee's action in denying Peck resident status is not supported by substantial evidence when reviewed in light of the record as a whole.

## Scope of Review

Judicial review of the residence committee's decision is governed by the KJRA.

The scope of review provisions of K.S.A. 77-621 are a codification of the common law of Kansas. *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. 470, 474-75, 749 P.2d 21 (1988). See Ryan, *The New Kansas Administrative Procedure and Judicial Review Acts*, 54 J.K.B.A. 53, 68 (1985).

The district court: (1) is restricted to considering the grounds for relief set forth in K.S.A. 77-621(c); (2) must presume the agency's findings valid; (3) may not set aside an agency order merely because the court would have reached a different conclusion if it had been the trier of fact; (4) may set aside the agency's finding when the finding is not supported by substantial competent evidence. (When the agency's determination "is so wide of the mark as to be outside the realm of fair debate"). *Zinke*, 242 Kan. at 474.

K.S.A. 77-621(c)(8) provides that agency action may be set aside by the court if it "is otherwise unreasonable, arbitrary or capricious." We have defined "unreasonable" action as action taken without regard to the benefit or harm to all interested parties. An agency's action is arbitrary and capricious if it is unreasonable or without foundation in fact. *Zinke*, 242 Kan. at 474-75.

On appeal, we will exercise the same review of the agency's action as does the district court. *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986).

### Review of The Residence Committee's Action

K-State argues that the district court improperly substituted its judgment for that of the Residence Committee sitting as an administrative board. K-State asserts that Peck did not establish his intent to make Kansas a permanent home and that the court's analysis erroneously shifted Peck's burden to the Residence Committee to establish nonresidency.

Peck contends that he produced uncontroverted evidence on the only two requirements of residency: his physical presence in Kansas and his intent to make Kansas his permanent residence. He asserts that, once his evidence established a prima facie case, the burden then shifted to the Residence Committee to come forward with evidence to refute Peck's evidence.

K.S.A. 76-729(a) provides:

"Persons enrolling at the state educational institutions under the control and supervision of the state board of regents who, if such persons are adults, have not been or, if such persons are minors, whose parents have not been residents of the state of Kansas for at least 12 months prior to enrollment for any term or session in a state educational institution are nonresidents for fee purposes."

K.S.A. 76-729(c)(4) defines "domiciliary resident" as "a person who has present and fixed residence in Kansas where the person intends to remain for an indefinite period and to which the person intends to return following absence."

K.S.A. 76-730(a) authorizes and requires the Board of Regents to "adopt rules and regulations prescribing criteria or guidelines for determination of residence of persons enrolling at the state educational institutions, so long as such criteria or guidelines are not in conflict with the provisions of this act."

Pursuant to the K.S.A. 76-730(a) mandate, the Board of Regents adopted K.A.R. 88-3-1 *et seq.*, Guidelines for the Determination of Residency for Fee Purposes.

Peck further argues that the Residence Committee inappropriately applied K.A.R. 88-3-2. K.A.R. 88-3-2, which defines "residence" for fee purposes and provides a framework for determining such residency, states in part:

"[R]esidence means a person's place of habitation, to which, whenever the person is absent, the person has the intention of returning. A person shall not be considered a resident of Kansas unless that person is in continuous physical residence and intends to make Kansas a permanent home, not only while in attendance at an educational institution, but indefinitely thereafter as well."

K.S.A. 76-729(c)(4) and K.A.R. 88-3-2(a) require a physical residence in Kansas coupled with the *intent* to make Kansas a permanent home following the completion of education. The first element, a physical residence, is easily established by the student and easily determined by the Residence Committee. Establishing and determining the second element of intent is more problematic. K.A.R. 88-3-2(b), (c), and (d) have been designed to aid the student and the committee in establishing and determining the student's intent.

K.A.R. 88-3-2(b) lists eight primary factors that, while not conclusive, will be given probative value in support of a claim for resident status. These factors are:

"(1) continuous presence in Kansas during periods when not enrolled as a student;
"(2) employment in Kansas;
"(3) payment of Kansas state income taxes;
"(4) reliance on Kansas sources for financial support;

"(5) commitments to an education program which indicates an intent to remain permanently in Kansas;

"(6) acceptance of an offer of permanent employment in Kansas;

"(7) admission to a licensed practicing profession in Kansas; or

"(8) ownership of a home in Kansas."

Subsection (b) begins: "The factors . . . include, but are not limited to, the following." The student is not precluded from presenting, and the residence committee is not precluded from considering additional probative information. No factor will be considered unless it has existed for at least one year. K.A.R. 88-3-2(b).

K.A.R. 88-3-2(c) lists nine secondary factors that, standing alone, ordinarily will not be sufficient evidence to establish Kansas resident status. These secondary factors are:

"(1) voting or registration for voting in Kansas;

"(2) employment in any position normally filled by a student;

"(3) lease of living quarters in Kansas;

"(4) a statement of intention to acquire residence in Kansas;

"(5) residence in Kansas of the student's spouse;

"(6) vehicle registration in Kansas;

"(7) acquisition of a Kansas driver's license;

"(8) payment of Kansas personal property taxes; or

"(9) continuous enrollment in a post secondary educational institution in Kansas."

These secondary factors are not probative for an intent determination because many are capable of being fulfilled within a few days of arriving in Kansas. The secondary factors may be characteristic of both bona fide resident and nonresident students.

K.A.R. 88-3-2(d) states that "ties with another state" may be sufficient evidence that residence in the other state has been retained. These ties to the other state include voting, payment of personal property taxes, registering a vehicle, or securing a driver's license.

We will consider each of the K.A.R. 88-3-2(b) primary factors and Peck's evidence presented to the Residence Committee.

Factor (1): *Continuous presence in Kansas during periods when not enrolled as a student.*

The summer of 1988 is the only period that Peck did not attend K-State after he moved to Kansas. During that period, Peck was out of Kansas, residing and working in Parkville, Missouri.

Factor (2): *Employment in Kansas.*

Peck stated in his affidavit that he was employed by Rising House Bicycles of Cambridge, Kansas. He did not list this information in his application for resident classification submitted six weeks earlier and did not list any income from this alleged employment. He provided no dates of employment. There is nothing in the record to show whether the employment existed for at least one year prior to enrollment or reenrollment. Peck did not furnish information regarding the nature of the employment to determine whether it is employment which would normally be filled by a student. He did not list this employment as a source of any financial support.

Factor (3): *Payment of Kansas state income taxes.*

Peck indicated that he did not file a Kansas state income tax return.

Factor (4): *Reliance on Kansas sources for financial support.*

Peck stated in his application that he received 42.5% of his support from his grandfather, a Kansas resident.

Factor (5): *Commitment to an educational program which indicates an intent to remain permanently in Kansas.*

In November 1989, Peck added a statement to the record indicating that he had applied to the University of Kansas School of Law and would apply to Washburn University School of Law for admission in the fall of 1990. The Residence Committee may have reasoned that this evidence does not indicate an intent to remain permanently in Kansas. At best, it indicates a possibility of attending school in Kansas for three more years. He did not state that he had not applied or did not intend to apply to schools in other states. He also stated he planned to practice law in Kansas City. He did not specifically state Kansas City, Kansas.

Factors (6), (7), and (8): *Acceptance of an offer of permanent employment in Kansas; admission to a licensed practicing profession in Kansas; and ownership of a home in Kansas.*

Peck provided no evidence of such acceptance or admission, nor did he provide evidence of ownership of a home in Kansas. He did state that he expected to inherit a portion of his grandfather's ranch.

Peck did provide information that he had abandoned his residence in Texas. In his affidavit, he stated that his former bedroom

at his father's residence in Texas has been converted to his half-sister's bedroom and that whenever he visited his father in Texas he slept on the couch. He stated he had no residence to return to in Texas. This information may have been characterized by the Residence Committee as not necessarily probative evidence of his intent to permanently remain in Kansas. After finishing his education, he is not precluded from moving to another state or from returning to Texas and establishing his own residence.

Concerning the secondary factors contained in K.A.R. 88-3-2(c), all of which have a transient characteristic, Peck reported that he had: (1) voted and registered to vote in Kansas; (2) registered his automobile in Kansas; (3) acquired a Kansas driver's license; and (4) paid last year's personal property tax in Kansas. A student's adherence to these factors is not sufficient to establish residency. The existence of these secondary factors in another state is to be regarded as evidence of retention of residence outside of Kansas. The absence of evidence of retention of residency outside of Kansas is not tantamount to establishing residency in Kansas. Individuals may sever visible ties with another state and fail to meet the criteria for residency for fee purposes in Kansas.

An analysis of the facts show that, among all the primary factors listed in K.A.R. 88-3-2(b) as probative evidence of resident status, Peck presented one piece of supportive evidence: that his grandfather in Wellington, Kansas, had provided somewhat less than half of his financial support. The remainder of Peck's evidence was secondary and, standing alone, not probative.

We find that the Residence Committee's decision was supported by substantial evidence. Those factors supplied by Peck, which are relevant to the Regents' guidelines, support the Residence Committee's conclusion that he did not qualify as a resident of Kansas for fee purposes.

Peck's evidence is not probative, standing alone, of an intent to remain in Kansas permanently. Peck opened his checking account in Wellington, Kansas, in 1986 while he was employed at the Ferguson Ranch immediately after graduating from high school. This act occurred when he was a nonresident (before he alleged he formed his alleged intent to become a permanent Kansas resident).

The district court reasoned that the Residence Committee may not draw a negative inference from Peck's failure to present evidence on a factor. This reasoning impermissibly shifts the burden to the Residence Committee to prove nonresident status. Under K.S.A. 77-621(a)(1), Peck bears the burden to show that the agency's action is invalid. This he has failed to do.

The probative evidence of Peck's intent to remain permanently in Kansas was the fact that a Kansas resident, his grandfather, was providing 42.5% of his financial support and that Peck used his grandfather's ranch in Cambridge as a permanent address.

This probative evidence is offset by evidence which supports the conclusion that Peck came to Kansas solely to attend K-State. Peck stated that he came to Kansas because his "significant other" attended K-State and because K-State would accept his credits and not his grade point average. He did not reside in Kansas during the summer of 1988, the only time he was not attending K-State after his move to Kansas.

Our responsibility is not to reweigh the evidence. The Residence Committee's finding is supported by substantial competent evidence. The Residence Committee's conclusion is not so wide of the mark as to be beyond the realm of fair debate.

Peck has not demonstrated that the Residence Committee's action is unreasonable, arbitrary, or capricious. He has not shown that the Residence Committee took the action of denying resident status without regard to the benefit or harm to all interested parties—Peck, K-State, and the Board of Regents.

Peck asserts that the Residence Committee erroneously applied K.A.R. 88-3-2. He challenges the weight the committee gave to the secondary factors in K.A.R. 88-3-2(c) the nonprobative secondary list. Peck refers particularly to his declaration of intent to be a resident. These factors are not probative of the second element required to establish resident status, intent to remain in Kansas permanently following completion of education. See *In re Residency Application of Bybee,* 236 Kan. 443, 691 P.2d 37 (1984).

Peck has not demonstrated that the Residence Committee erroneously applied the law or the regulations.

### The Validity of the Board of Regents' Regulations

Peck argues that K.A.R. 88-3-2(a), which defines "residence" for fee purposes, is invalid and contrary to law because it adds

requirements to the K.S.A. 76-729(c)(4) definition of "domiciliary resident."

Rules and regulations of an administrative agency, to be valid, must be within the statutory authority conferred upon the agency. If they go beyond such statutory authority or are otherwise inconsistent with the law, the rules and regulations are void. *Halford v. City of Topeka*, 234 Kan. 934, 939-40, 677 P.2d 975 (1984). Administrative regulations are presumed valid, and one who attacks them has the burden of showing their invalidity. *Capital Electric Line Builders, Inc. v. Lennen*, 232 Kan. 379, 383, 654 P.2d 464 (1982). "An administrative regulation must be construed in harmony with a statute relating to the same subject matter to the end that both may be given effect if possible." *Kansas Comm'n On Civil Rights v. City of Topeka Street Dept.*, 212 Kan. 398, Syl. ¶ 5, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973).

K.S.A. 76-730 requires the Board of Regents to adopt rules and regulations establishing guidelines for determination of residence "so long as such criteria or guidelines are not in conflict with the provisions of this act."

K.S.A. 76-729(c)(4) defines "domiciliary resident" as "a person who has present and fixed residence in Kansas where the person intends to remain for an indefinite period and to which the person intends to return following absence."

K.A.R. 88-3-2(a) defines "residence" for fee purposes as

"a person's place of habitation, to which, whenever the person is absent, the person has the intention of returning. A person shall not be considered a resident of Kansas unless that person is in continuous physical residence and intends to make Kansas a permanent home, not only while in attendance at an educational institution, but indefinitely thereafter as well."

Peck asserts that K.A.R. 88-3-2(a) conflicts with K.S.A. 76-729(c)(4) because it adds the requirement of "continuous physical presence" and intent to make Kansas a "permanent home, not only while in attendance at an educational institution, but indefinitely thereafter as well." K.A.R. 88-3-2(a). Peck's assertions are not persuasive.

The definition contained in K.A.R. 88-3-2(a) does not add conflicting or additional requirements. It simply seeks to clarify the definition in K.S.A. 76-729(c)(4 ).

The definition of "domiciliary residence" in K.S.A. 76-729(c)(4) refers to an "indefinite period." "Permanent home" is a clarification of residence for an indefinite period. The phrase "not only while in attendance at an educational institution, but indefinitely thereafter as well," is designed to differentiate nonresident students who reside in Kansas solely to attend school from bona fide residents who attend school in Kansas *and intend* to be residents of Kansas.

Peck challenges the last sentence of K.A.R. 88-3-2(b). This sentence states: "No factor shall be considered in support of a claim for resident status unless the factor has existed for at least one year prior to enrollment." Peck contends this provision is an impermissible attempt to amend the Kansas rules of evidence and is, therefore, contrary to law. Peck's contention lacks merit.

K.A.R. 88-3-2 does not limit the evidence that an applicant for resident status may present. In the case at bar, Peck was allowed to supplement his evidence until the hearing occurred. K.A.R. 88-3-2 informs the applicant of the relevant weight evidence will be given in advance of applying for resident status. K.A.R. 88-3-2 does not attempt to amend the rules of evidence.

The "at least one year" challenged provision of K.A.R. 88-3-2(b) is not contrary to law. The element of a student's intent is difficult to ascertain. Requiring a student to demonstrate that probative factors have been in existence for at least one year enables the Residence Committee to determine that the K.S.A. 76-729 required intent has been in existence for at least 12 months.

Linking the broad authority K.S.A. 76-730 confers on the Board of Regents with the definition of "domiciliary resident" appearing in K.S.A. 76-729(c)(4), we hold K.A.R. 88-3-2 is not invalid as being contrary to law.

### Regents' Regulations—Inappropriate and Unreasonable?

Peck argues that K.A.R. 88-3-2 is inappropriate, unreasonable, vague, ambiguous, and so subject to misconstruction as to be inadequate for its intended use. He asserts that the regulation's intended purpose is to advise students how residence may be established and to aid the decision maker in determining residence. He contends the regulation does not explain that proof of residence consists of only two factors, "physical presence" and

"intent to remain indefinitely." Peck asserts the regulation does not explain that the factors have probative value only as they relate to the subjective intent to remain. He complains that K.A.R. 88-3-2 sets forth exclusive factors which are essential to the establishment of residence and precludes other factors worthy of consideration. Peck's arguments are conclusions and are not convincing.

The Board of Regents argues that the regulations set forth criteria and guidelines to be used by educational institutions in order that the institutions may be "virtually certain" that students have the requisite intent to remain in Kansas indefinitely before granting them resident status for fee purposes. These criteria are necessary when the issue is as nebulous as a student's subjective intent to be a resident of Kansas.

To be valid, administrative regulations must be appropriate and reasonable. *Halford,* 234 Kan. at 940. The test of whether an administrative regulation is void for vagueness is whether it delineates its reach in words of common understanding. *Smaldone v. United States,* 458 F. Supp. 1000, 1003 (D. Kan. 1978).

The United States Supreme Court has said that states can "establish such reasonable criteria for in-state status as to make *virtually certain* that students who are not, in fact, bona fide residents of the state, but who have come there solely for educational purposes, cannot take advantage of the in-state rates." (Emphasis added.) *Vlandis v. Kline,* 412 U.S. 441, 453-54, 37 L. Ed. 2d 63, 93 S. Ct. 2230 (1973).

Any determination of domicile seeks to use objective criteria to establish a subjective concept, *i.e.,* intent to remain in the state indefinitely. The concept is not subject to a formula, but depends upon the facts of each case. The relative weight to be given each objective factor is not capable of quantification. The question to be answered in each case is whether the student came to the state solely to attend school or whether the student intends to make this state his or her home. *Hooban v. Boling,* 503 F.2d 648, 652 (6th Cir. 1974), *cert. denied* 421 U.S. 920 (1974).

To permit a student to announce the intention of becoming a permanent resident of the state on the day of the student's arrival, to accept a biased and self-serving statement as the truth, and

to permit the student to reinforce the statement by registering a car and securing a driver's license in this state would simply place a premium on deception. *Arizona Board of Regents v. Harper,* 108 Ariz. 223, 227-28, 495 P.2d 453 (1972).

Regulations in Hawaii for determining resident status of students, which are similar to those in the case at bar, were approved by the United States District Court for the District of Hawaii. The court stated:

"We also recognize that states have an especially difficult administrative problem in determining the residency of college students coming from out of state, for many (and sometimes all) of the local contacts they establish are fully as consistent with an intent to leave upon conclusion of the course of study as with an intent to remain indefinitely." *Hasse v. Board of Regents of University of Hawaii,* 363 F. Supp. 677, 679 (D. Hawaii 1973).

K.A.R. 88-3-2 first defines residence in subsection (a) as continuous physical presence and intent to make Kansas a permanent home, not only while attending the educational institution, but indefinitely thereafter as well. Subsection (b) then lists eight factors (the eight are not conclusive or limiting) that are intended to be objective criteria probative of intent. The regulation does not state that these factors go to the issue of intent; however, this does not make them inappropriate, unreasonable, or vague. Subsection (c) lists nine factors which will not be considered probative evidence of residence standing alone. These nine factors are easily accomplished by any nonresident student. The Board of Regents is justified in considering the nine secondary factors, standing alone, as not probative evidence of the issue of intent. K.A.R. 88-3-2 states the type of factors that will be considered to be probative evidence of resident status in words of common understanding. It is not necessary to explain that these factors relate to intent.

K.A.R. 88-3-2 is appropriate and reasonable and is not impermissibly vague. Peck has not sustained his burden to show that the regulation is invalid.

### Regents' Regulations—The Constitutional Question

As a preliminary matter, the Board of Regents asserts that Peck's constitutional arguments are not properly before this court on appeal. In support of its assertion, the Board of Regents argues that the issue was not sufficiently raised in the district court.

Although Peck's constitutional argument in the district court was brief, nevertheless, Peck did raise the issue of violation of equal protection, due process, and the right to travel. He specifically stated he did not abandon his claim of unconstitutionality. The Board of Regents thoroughly briefed the constitutional issues for the district court. The district court ruled that the challenged regulation is not unconstitutional on its face or as applied.

The constitutional questions are properly before us. (We note that Peck has abandoned his claim that K.A.R. 88-3-2 violates the right to travel.)

### Equal Protection

Peck argues that, to the extent K.A.R. 88-3-2 is construed and applied to mean that one can be a resident of the state for every purpose except for attaining resident status at a state educational institution, the regulation denies equal protection under the Fourteenth Amendment to the U.S. Constitution. Peck cites no authority.

The Court of Appeals for the Seventh Circuit has addressed this contention:

"Finally, plaintiffs assert that the state may not classify as non-residents persons who are residents of the state for all other purposes. With apologies to Gertrude Stein, a resident is not a resident is not a resident. Resident status necessarily varies with the state program at issue. A person may well be a resident for taxation or voting determinations and yet fail the essential question in the context of the instant case, i.e., whether the person came to the state 'solely for educational purposes.' " *Lister v. Hoover*, 655 F.2d 123, 128 (7th Cir. 1981).

The test in an equal protection challenge to rules and regulations used to determine resident status for fee purposes is whether the rules and regulations bear a rational relationship to a legitimate state purpose or objective. *Lister*, 655 F.2d at 127; *Hooban v. Boling*, 503 F.2d at 650; *Hayes v. Board of Regents of Kentucky State University*, 495 F.2d 1326, 1328 (6th Cir. 1974).

"A state has a 'legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis.' " *Hooban*, 503 F.2d at 651 (quoting *Vlandis v. Kline*, 412 U.S. at 453).

K.A.R. 88-3-2 is rationally related to a legitimate state interest and does not violate the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.

## Due Process

Peck argues that he was denied due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution because the Residence Committee's interpretation of K.A.R. 88-3-2 prevented the committee from considering his evidence. Peck labels this argument as denial of substantive due process. He cites *Unruh v. U.S.D. No. 300*, 245 Kan. 35, 41-43, 775 P.2d 171 (1989), which discusses procedural due process. Additionally, Peck argues that K.A.R. 88-3-2 is unconstitutional on its face because it provides: "No factor shall be considered in support of a claim unless the factor has existed for at least one year prior to enrollment or reenrollment." K.A.R. 88-3-2(b).

The Residence Committee asserts that it considered all of Peck's evidence but failed to find it to be probative evidence of his intent to remain indefinitely in Kansas.

On appeal a rebuttable presumption of validity attaches to a challenged administrative regulation. The person challenging the regulation bears the burden to show invalidity. *Capital Electric Line Builders, Inc. v. Lennen*, 232 Kan. 379, 383.

Basic elements of procedural due process of law are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *In re Petition of City of Overland Park for Annexation of Land*, 241 Kan. 365, 370, 736 P.2d 923 (1987). Peck asserts he was not heard in a meaningful manner because some of his evidence was not considered.

There is no basis in the record for Peck's assertion. He was not prevented from presenting evidence. Peck identifies no evidence in particular which was disregarded. K.A.R. 88-3-2 does not limit what the Residence Committee may consider. The regulation informs the student applicant what the committee considers to be probative evidence. Peck has not demonstrated that the regulation is unconstitutional on its face or as applied.

Similar rules and regulations in other states have been challenged by the arguments advanced by Peck in the case at bar. Almost universally, the rules and regulations have been held

valid. See Annot., 56 A.L.R.3d 641; and Annot., 37 L. Ed. 2d 1056.

We reverse the district court in part. The Residence Committee's decision is based on substantial competent evidence.

We affirm the district court in all other respects: (1) The decision of the Residence Committee was not unreasonable, arbitrary, or capricious; (2) the Residence Committee did not erroneously interpret or apply the law; and (3) K.A.R. 88-3-2 is neither beyond the authority conferred by K.S.A. 76-730 nor contrary to law, inappropriate, unreasonable, or unconstitutional.

We call the Board of Regents' attention to K.A.R. 88-2-4. Reference is made to K.S.A. 60-2101 as the appropriate statutory provision for initiating appeals from residence committee decisions. The Board may wish to update its regulation to comply with the passage of the KJRA.

Reversed in part and affirmed in part.