Kevin Schultz, Board President Big Bend Groundwater Management District No. 5 125 South Main, P.O. Box 7 Stafford, Kansas 67578
Dear Mr. Schultz:
As president of groundwater management district (GMD) no. 5 you inquire whether the department of agriculture, division of water resources (DWR) can require a reduction in the amount of groundwater that may be pumped by a landowner as a condition to approving an application for a partial change in type of use or change in place of use and second, you ask whether the consumptive use regulations apply to a water right that was obtained prior to May 1, 1983.
You provide the following facts for explanatory purposes and by way of example. A landowner has a water right authorizing the use of 240 feet of groundwater on a described 160 acre tract for irrigation. The landowner makes application for a partial change in use to permit a portion of the groundwater pumped to be used for stock watering (a value added livestock operation) on this same 160 acre tract. You further state that at no time will the combined use, irrigation and stock watering exceed the maximum annual quantity and maximum rate of diversion authorized under the existing water right and that the proposed change will not materially injure or adversely affect other water rights or permits to appropriate water.
Applications to change a water appropriation permit are governed by K.S.A. 1994 Supp. 82a-708b. The statute permits a water right owner to change the place of use, the point of diversion, or the type of use without losing the priority date of the initial water right. The water right owner must apply to the chief engineer of the division of water resources and prove that the proposed change is reasonable, will not impair existing rights, and that the proposed change relates to the same local source of supply as that to which the water right relates in order to receive the chief engineer's approval.
The statute requires that approval or rejection of an application for change be made using the same criteria prescribed for processing original applications to appropriate water. Accordingly, the chief engineer must determine 1) whether a proposed use impairs a use under an existing water right, and 2) whether a proposed use prejudicially and unreasonably affects the public interest, taking into consideration, for example, whether the proposed use will raise or lower the static water level, K.S.A. 1994 Supp. 82a-711. Additionally the statute authorizes the chief engineer to place conditions on his approval of a change of use by "requiring it to conform to the public interest to the end that the highest public benefit and maximum economical development may result from the use of such water."
Thus, the application of statutory criteria determines whether any proposed change will be approved by the chief engineer. Accordingly, whether the proposed change will or will not injure or adversely affect water rights is a determination of fact that is made by the chief engineer at the time of application for change.
Regulations promulgated by the chief engineer implement the statutory criteria and provide the necessary guidelines for application of the statutory criteria to specific requests for change. The specific change from an irrigation use to a stock watering use in your facts is addressed by K.A.R. 5-5-10. The regulation deals with how a change in the type or the place of use of a water right affects consumptive use. Consumptive use is defined in K.A.R. 5-5-8 as "gross diversions minus: (1) waste of water, as defined in K.A.R. 5-1-1 (cc), and (2) return flows to the source of water supply: (A) through surface water runoff which is not waste; and (B) by deep percolation." Whether the combined use of irrigation and stock watering will exceed the maximum rate of diversion authorized under the existing water right is determined by application of the regulations based on the theory of net consumptive use.
A water right holder may not substantially increase his consumptive use of water after a vested right has been determined or a water right perfected. K.A.R. 5-5-3. The net consumptive use theory is used to achieve the basic goal of ensuring that any water right or senior permit (to the date the change application is filed) will not be injured by the approval of a change.
The theory is more easily understood by example. A water right owner who has perfected a water right to irrigate using 240 feet of water on a 160 acre tract for irrigation purposes normally will not use 240 acre feet of water every year. Statistically, an irrigator will use only two thirds of his or her water right on the average. See DWR compilations of water use reports required by K.S.A. 1994 Supp. 82a-732 since 1988. This is primarily true because irrigators are approved for enough quantity of water to satisfy the crop needs in most dry years (8 years out of 10). Obviously, when precipitation is higher the fully permitted quantity is not needed. Also, crop choices, government farm programs and many other factors can affect the demand for water for irrigation. If approval of a change application would substantially increase the gross pumpage under that water right by allowing the right to be pumped to its maximum quantity every year instead of every other year, the consumptive use would also increase and nearby well owners who depend on that same source of water supply would be injured by the change approval.
Applying the theory to the scenario that you provide, if the irrigator typically used two thirds of his water right, he would pump 800 acre feet (160 acre feet x 5 years) in five years. If, however, he sold that right to a city which is capable of using it all every year, the city would consume 1200 acre feet (240 acre feet x 5 years) in five years. This increased use of 400 acre feet of water in five years could injure other groundwater users in the vicinity who were senior to the change approval.
Because of the possibilities, the chief engineer of the division of water resources has adopted regulations which are used to: (a) determine how much water has been historically consumed under a water right; and (b) determine how much water can be totally consumed at another place if the use of that water right is changed without injuring local groundwater right holders. See
K.A.R. 5-5-8 through 5-5-12 (inadvertently not published in the 1994 Kansas Administrative Regulations but see Kansas Register V. 13, No. 41 p. 1547, or a copy may be obtained from the division of water resources). In general, substantially increasing the size of the place of use substantially increases the consumptive use to the detriment of neighboring groundwater right holders. In the event that the regulations are not applicable, the water right owner has the option of showing better hydrological information for that specific water right, K.A.R. 5-5-9 (b) and 5-5-11(c)(2).
After that lengthy but necessary explanation of the context of your question, we will address the issue presented by your question. At issue is whether the regulations dealing with consumptive use are within the division of water resources' statutory authority. Rules and regulations are a valid exercise of an administrative agency's power if they are within the statutory authority conferred upon the agency. Peck v. UniversityResidence Committee of Kansas State University, 248 Kan. 450, 462
(1991). The water appropriation act authorizes the promulgation of regulations that are reasonably necessary for the control, conservation, regulation, allotment and distribution of the water resources of the state, K.S.A. 82a-706a.
The regulations in question deal with calculating and maintaining the quantity of available water, wherein return flows factor into the calculations. A prohibition against increasing consumptive use that ensures a certain level of return flows is, in our judgment, a reasonable method for exercising the duty to control the distribution of water resources in our state. Additionally, the chief engineer of the division of water resources is expressly authorized by K.S.A. 1994 Supp. 82a-711 and K.S.A. 82a-712 to condition approvals for change as deemed "necessary to protect the public interest." In our opinion the regulations authorizing the reduction of groundwater as a condition to granting a change application are within the statutory authority conferred upon the division of water resources.
Your second question is whether the division of water resources consumptive use regulations apply to a water right obtained prior to May 1, 1983. Change applications are evaluated by the criteria established by regulation at the time the change application is filed. The consumptive use regulations apply to any change application filed after November, 1994 the date on which these particular regulations were adopted.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm