IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 128,903

STATE OF KANSAS,
*Appellee*,

v.

ADRIAN N. ZONGKER,
*Appellant.*

SYLLABUS BY THE COURT

1.

The absurdity canon permits courts to choose between textually permissible statutory interpretations to avoid unreasonable results, but it does not authorize departing from unambiguous text or correcting a drafter's failure to anticipate a provision's effect.

2.

Legislative intent guides statutory interpretation. While a subsequent legislature's action or inaction may at times bear on an interpretation, the legislative intent that governs is the one expressed in the enactment itself.

3.

Under the *in pari materia* doctrine, courts interpret laws on the same subject with an eye toward reconciling them into workable harmony, if possible. The doctrine can also help assess whether statutory language is plain and unambiguous in the first instance. But the doctrine requires harmony only where possible.

1

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument January 29, 2026. Opinion filed April 3, 2026. Sentence vacated in part and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WALL, J.: This jail-credit appeal asks whether our court wrongly decided *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025). There, our court held that a statute granting jail credit for "'the time which the defendant has spent incarcerated pending the disposition of the defendant's case'" required credit for all time spent incarcerated, regardless of whether the defendant received credit for some or all that time against a sentence in another case. 320 Kan. at 307, 311-12.

The State thinks *Ervin* was wrong. It contends that *Ervin* produces absurd results. It argues that decades of legislative inaction, coupled with a prompt statutory amendment, show the decision misread legislative intent. And it argues that the textual analysis conflicts with administrative regulations and consecutive-sentencing statutes and leaves too many questions open.

We are unpersuaded. Courts do not depart from clear statutory text to reach outcomes that seem more reasonable, even when drafters failed to anticipate a provision's effect. Nor can we consult related statutes to apply carveouts the text does not contain. The policy judgments embedded in a statute belong to the Legislature, and we doubt that body would appreciate us substituting our own.

FACTS AND PROCEDURAL BACKGROUND

Adrian N. Zongker shot and killed a Wichita restaurant owner. He pleaded no contest to criminal possession of a weapon and was convicted at trial of premeditated first-degree murder. We affirmed both convictions but remanded for resentencing on the weapons charge with an amended criminal-history score. See *State v. Zongker*, 319 Kan. 411, 437-38, 555 P.3d 698 (2024).

At resentencing, the district court applied K.S.A. 21-6606(c), which requires a defendant on probation or postrelease supervision to serve any new sentence consecutive to the earlier one. Zongker had been on postrelease when he committed the murder, with 233 days remaining on his prior case. The court awarded him 526 days of jail credit but noted that Kansas Department of Corrections (KDOC) had also held him on a warrant for a parole violation for about 8 months while this case was pending. Because the consecutive-sentence rule applied, the court held that any credit Zongker received for those eight months in his earlier case barred duplicative credit here.

Zongker disagreed and appealed directly to our court, which has jurisdiction because the district court imposed a life sentence for an off-grid crime. See K.S.A. 22-3601(b)(3)-(4); K.S.A. 21-5402(b). We placed this matter on the January 2026 summary-calendar docket and decided it without oral argument.

ANALYSIS

While Zongker's case has been pending, our court has decided two important jail-credit cases. First, in *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), we departed from four decades of precedent construing the jail-credit statute. Under the old rule,

3

courts awarded credit only for time spent in custody "solely" on the charge being sentenced—not for time "'spent in jail upon other, distinct, and wholly unrelated charges.'" 317 Kan. at 655.

But the jail-credit statute's text contained no such limit. Our court had simply read it in. So we reversed course and held that the plain language required credit for "*all* time spent in custody pending the disposition of his or her case," regardless of whether the defendant "had other cases pending against him while he was in jail." 317 Kan. at 657, 659.

Then, in *Ervin*, we applied that holding to consecutive sentences. Although *Hopkins* involved a single case, it did not "limit the holding to sentences involving single cases or concurrent sentences." *Ervin*, 320 Kan. at 308. So when a defendant receives consecutive sentences in separate cases, a "sentencing judge should thus allow credit for all days incarcerated on a case, regardless of whether the defendant received a credit for some or all that time against a sentence in another case." 320 Kan. 287, Syl. ¶ 12.

That rule controls here. The district court denied Zongker credit for the eight months KDOC held him on a warrant because he may have received credit for that time in his prior case, which is exactly what *Ervin* prohibits. Neither party disputes that *Ervin*'s interpretation of the jail-credit statute applies here. See *State v. Romey*, 321 Kan. 400, 417-18, 580 P.3d 1 (2025).

Zongker did not challenge his jail-credit award below. He invokes an exception to the general rule against raising issues for the first time on appeal, which applies when a "'newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative.'" *Schutt v. Foster*, 320 Kan. 852, 856, 572 P.3d 770 (2025). The State takes no position on preservation. We applied that exception in *Ervin* and do so again here. *Ervin*, 320 Kan. at 306.

4

The State's position on *Ervin* is no secret. It has argued in multiple cases that the decision misreads the text, creates bad incentives, and conflicts with legislative action. See, e.g., *State v. Watie*, 66 Kan. App. 2d 166, 169-71, 577 P.3d 674 (2025), *rev. denied* 321 Kan. 795 (2026). It does so again here.

The State's substantive arguments fall into three categories: that *Ervin*'s practical effects are absurd, that legislative history undermines its statutory interpretation, and that it conflicts with how we normally interpret statutes. We take them in turn.

The State's first argument is that *Ervin* produces absurd results. It invokes the canon allowing courts to construe statutes to avoid unreasonable outcomes. *State v. Arnett*, 307 Kan. 648, 653-54, 413 P.3d 787 (2018). The alleged absurdities: *Ervin* encourages crimes by inmates, probationers, and defendants on pretrial release; it gives those people two days of credit for one day incarcerated; and it conflicts with consecutive-sentencing statutes and administrative regulations.

But the absurdity canon has limits. An absurd result "may be a perfectly valid reason for choosing one textually permissible interpretation over another but it is no basis for disregarding or changing the text." Scalia & Garner, Reading Law: The Interpretation of Legal Texts, p. 237 (2012). That's why we typically apply the canon when the statute is ambiguous. *Arnett*, 307 Kan. at 653. And it does not extend to "substantive errors arising from a drafter's failure to appreciate the effect of certain provisions." Scalia & Garner, p. 238. The canon "is meant to correct obviously *unintended* dispositions not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense." Scalia & Garner, p. 239. To use it otherwise would be to revise statutes "to make them (in the judges' view) more reasonable." Scalia & Garner, p. 237.

5

This statute is not ambiguous. The Legislature directed courts to award jail credit "for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 21-6615(a). The State reads that to bar duplicative credit across cases. But no textually permissible reading gets there. The statute does not say that, and it is not our role to add language that makes it (in the State's view, or the court's) more reasonable.

The State's second argument draws on legislative history. It contends that the Legislature's prompt post-*Hopkins* amendment barring duplicative credit shows it never intended to allow it. And it argues that the Legislature's silence after prior caselaw barred duplicative credit shows that the Legislature approved that rule.

Neither argument holds. Legislative intent guides statutory interpretation, but we discern that intent through the plain language of the enactment. And the intent that matters is not "a will evolving from Session to Session, but a will expressed and fixed in a particular enactment." *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 101 n.7, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991). The State argues that the post-*Hopkins* amendment clarified what the Legislature always intended. But the 2024 Legislature can clarify only its own intent, not the intent of the Legislature that enacted the original statute. See *United States v. Price*, 361 U.S. 304, 313, 80 S. Ct. 326, 4 L. Ed. 2d 334 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

And the timing of the amendment cuts against the State in any event. It came after *Hopkins*—which the State does not dispute was a correct plain-language reading—and it expressly barred duplicative credit before *Ervin* was decided. That sequence, along with testimony the State itself cites, shows that the Legislature understood that *Hopkins*' plain-language interpretation could require duplicative credit and acted to bar it. If anything, the amendment is evidence that *Ervin* read the statute correctly.

6

Legislative silence fares no better. It is "perilous to rely heavily on legislative silence and inaction to conclude that a court's interpretation of a statute is correct" because such silence typically reflects "'unawareness, preoccupation, or paralysis'" rather than deliberate approval. *State v. Jackson*, 287 Ga. 646, 659 n.8, 697 S.E.2d 757 (2010). More fundamentally, our duty is to interpret the statute the enacting Legislature passed. A later Legislature's failure to act tells us little about what an earlier one meant. See *Wenke v. Gehl Co.*, 274 Wis. 2d 220, 243, 682 N.W.2d 405 (2004) (noting that "a subsequent legislature's approval of a judicial construction is not as probative as the intent of the legislature *when it enacted the statute*"); Easterbrook, *Stability and Reliability in Judicial Decisions*, 73 Cornell L. Rev. 422, 427 (1988) ("The failure of a different body to act hardly shows that the interpretation of what an earlier one did is 'right.'"). As Justice Scalia put it, perhaps "we should admit that vindication by congressional inaction is a canard." *Johnson v. Transportation Agency*, 480 U.S. 616, 672, 107 S. Ct. 1442, 94 L. Ed. 2d 615 (1987) (Scalia, J., dissenting).

The State's third argument is that *Ervin* conflicts with how we normally interpret statutes. It has two parts.

The first is that *Ervin* leaves too many questions unanswered. The statute requires credit "for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 21-6615(a). And the State identifies several edge cases: Does custody in other jurisdictions count? What if a defendant on bond is arrested on an unrelated matter in a different county? What of crimes committed while already incarcerated? What about new crimes committed on probation that aren't charged until revocation? In the State's view, that uncertainty shows *Ervin*'s approach was wrong.

But unanswered questions are not evidence of a flawed interpretation. Hard applications arise under every statute. None of those circumstances are before us, and we do not answer hypothetical questions about how a statute might apply to third parties in future cases. We reserve judgment until the facts are before us.

The State also argues that *Ervin* should have interpreted the jail-credit statute to avoid conflict with Kansas administrative regulations. We do not follow that argument. Regulations carry the force of law, but they are "always subservient to statutes." *Halford v. City of Topeka*, 234 Kan. 934, 939, 677 P.2d 975 (1984). They exist to implement legislative intent, not to alter or contradict it. If a corrections regulation conflicts with the plain language of the statute, it is not the statute that yields.

The second part of the State's statutory-interpretation argument is that *Ervin* conflicts with consecutive-sentencing statutes. They provide, for example, that a person on felony probation or postrelease who commits a new crime must serve the new sentence consecutive to the prior one. K.S.A. 21-6606(c). Zongker's case illustrates the problem. He was on postrelease when he committed the murder, so his new sentence ran consecutive to the prior one. But KDOC also held him on a warrant in the prior case for about eight months while his murder charge was pending. *Ervin* means that time counted toward both, and the State argues that result is difficult to square with the consecutive-sentencing scheme.

In its view, this conflict shows we failed to read the jail-credit statute *in pari materia* with the consecutive-sentencing statutes. Under that doctrine, courts interpret laws on the same subject with an eye toward reconciling them into workable harmony, if possible. See *Bruce v. Kelly*, 316 Kan. 218, 224-25, 514 P.3d 1007 (2022). We have recognized that the doctrine can also help assess whether statutory language is plain and unambiguous in the first instance. 316 Kan. at 224.

8

But the doctrine requires harmony only "if possible." 316 Kan. at 224. The jail-credit statute is clear, and no textually permissible reading accommodates the duplicative-credit exception the State seeks. The consecutive-sentencing statutes say nothing about jail credit, and the jail-credit statute says nothing about consecutive sentences. The State's proposed exception has no textual home in either provision. We may consult related statutes to inform our reading, but where the text "prevents such accommodation, it is not our function to eliminate clearly expressed inconsistency of policy." *Casey*, 499 U.S. at 101. The *in pari materia* doctrine does not permit us to read a carveout into text that contains none, which was precisely the error *Hopkins* corrected. That is the Legislature's job. And it did that job swiftly here, which means *Hopkins* and *Ervin* apply to a fixed (and shrinking) set of cases.

The State's arguments for overruling *Ervin* are unpersuasive. The amount of additional jail credit Zongker is entitled to is not in dispute. We remand with directions to enter an amended journal entry crediting Zongker with all days spent incarcerated pending disposition of this case, including any days for which he also received credit in the prior case.

Sentence vacated in part and case remanded with directions.

LUCKERT, J., not participating.